No. 84-549

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

_____

SHIRLEY RUSSO COLES,

        Claimant and Respondent,

   -vs-

SEVEN ELEVEN STORES,

        Employer,
  and

AMERICAN MOTORISTS INSURANCE
COMPANY,

        Defendant and Appellant.

_____

APPEAL FROM:  Workers' Compensation Court, The Honorable Timothy
              Reardon, Judge presiding.


COUNSEL OF RECORD:

    For Appellant:

        Keller, Reynolds, Drake, Sternhagen & Johnson; Paul
        T. Keller, Helena, Montana

    For Respondent:

        Charles Smith, Helena, Montana

_____

               Submitted on Briefs:  May 23, 1985

                        Decided:  August 20, 1985

Filed: AUG 20 1985

_Ethel M. Harrison_
_____
Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

The insurer, American Motorists Insurance Company, appeals a decision of the Workers' Compensation Court ordering it to pay the claimant, Shirley Russo Coles, permanent total disability benefits rather than permanent partial disability benefits; setting the rate of compensation at $123.39 per week; and awarding costs, attorneys' fees and a 20% penalty to the claimant. We affirm.

On October 10, 1981, while working as a clerk in a convenience store, the claimant fell from a ladder, struck her mid and lower back on a sink and then hit the floor on her back and left side of her head. Following an examination at the hospital emergency room, she was released to go home. She attempted to return to work the next week, but after about one day she had to leave because her neck was stiff and sore and she had developed a severe headache.

The Workers' Compensation Court found that the claimant had fibromyositis, a significant soft tissue injury. Relying primarily on the treating physician's statements, the judge also found that the claimant's condition was as far restored as her injuries would permit on April 10, 1983. He found that she had a 15% whole person impairment. From her medical condition and the presence of non-medical elements of disability such as her lack of specialized training and limited work experience, the court concluded the claimant was temporarily totally disabled until April 10, 1983 and, "until vocationally retrained, is permanently totally disabled as a result of her industrial accident." (Emphasis in original.)

The insurer calculated the claimant's rate of disability payments based on a forty-hour work week. When

2

she began work in August 1981, her scheduled hours of employment were 2:00 to 10:30 p.m., seven days a week, with additional hours as needed to fill in for absent employees. She worked the following hours after being hired:

|            | straight time hours | overtime hours |
|------------|---------------------|----------------|
| 1 week     | 57.75               | 19.00          |
| 2 weeks    | 80.00               | 27.75          |
| 2 weeks    | 72.00               | 28.50          |
| 2 weeks    | 80.00               | 30.75          |
| final week | 29.00               | 0.00           |

The court below determined that her overtime hours were part of her usual hours and should be included in the calculation of disability benefits.

The insurer terminated the claimant's temporary total disability payments on about October 9, 1982. Thereafter, it paid 25 weeks of permanent partial disability based on a physician's report estimating her medical impairment rating at 5%. The report did not refer to her ability to return to work. The insurer refused to pay any further benefits despite repeated requests by the claimant. On May 21, 1984, the same day an order was issued setting a hearing date on the claimant's petition for an emergency hearing, the insured paid part of the back payments due. Just prior to the hearing date, it paid the remaining back payments to claimant. The Workers' Compensation Court found the insurer's termination of benefits and its refusal to pay permanent total disability benefits unreasonable.

The claimant's petition came to trial before the Workers' Compensation Court on September 12, 1984. On

3

November 20, 1984 the court entered its findings of fact, conclusions of law and judgment ordering the insurer to pay the claimant temporary total disability benefits from October 11, 1982 until April 9, 1983 and permanent total disability benefits from April 10, 1983 until further ordered; ordering the payment of compensation benefits at $123.39 per week; ordering the insurer to pay the claimant a 20% increase in the rate as a penalty; awarding the claimant costs and attorneys' fees; and ordering the Division of Workers' Compensation to determine if vocational rehabilitation was possible for the claimant.

The insurer raises the following issues on appeal:

(1) Did the Workers' Compensation Court err by finding the claimant permanently totally disabled rather than permanently partially disabled?

(2) Did the Workers' Compensation Court err by including overtime hours when calculating the rate of compensation?

(3) Did the Workers' Compensation Court err by awarding a penalty to the claimant?

When reviewing a decision of the Workers' Compensation Court, the standard is "whether there is substantial evidence to support the findings and conclusions of that court. We cannot substitute our judgment for that of the trial court as to weight of the evidence on questions of fact. Where there is substantial evidence to support the Workers' Compensation Court, this Court cannot overturn the decision." (Citations omitted.) Hume v. St. Regis Paper Company (1980), 187 Mont. 53, 59, 608 P.2d 1063, 1066.

Section 39-71-116(13), MCA defines permanent total disability as:

4

> "a condition resulting from injury as defined in this chapter that results in the loss of actual earnings or earning capability that exists after the injured worker is as far restored as the permanent character of the injuries will permit and which results in the worker having no reasonable prospect of finding regular employment of any kind in the normal labor market. Disability shall be supported by a preponderance of medical evidence."

In the case at bar, the testimony and reports of the treating physicians supported the court's findings on the claimant's disability. The insurer's medical report, although stating a different conclusion, contained no medical findings that contradicted those of the treating physicians. The disability was supported by a preponderance of medical evidence.

Disability has non-medical as well as medical components. In Metzger v. Chemetron Corp. (Mont. 1984), 687 P.2d 1033, 1035, 41 St.Rep. 1788, 1790-1791, we held that:

> "To establish the existence of no reasonable prospect of employment in the normal labor market, a claimant must introduce substantial credible evidence of (1) what jobs constitute his normal labor market, and (2) a complete inability to perform the employment and duties associated with those jobs because of his work-related injury." (Citations omitted.)

Once a claimant presents evidence showing there is no reasonable prospect of employment, "the burden of proof shifts to the employer to show that suitable work is available." Metzger, 687 P.2d at 1036. The claimant had little job experience and no specialized training. Her physician, who was in a position to have the most complete picture of her physical condition, testified that she should not return to the type of work in which she had experience. This evidence sufficiently showed that the claimant had no

5

reasonable job prospects in the labor market. The employer failed to carry the subsequent burden of proof when it did not introduce any evidence to establish suitable work was available. We hold that the Workers' Compensation Court's decision finding the claimant permanently and totally disabled is supported by substantial evidence, particularly in light of the court's referral of the claimant for a vocational rehabilitation evaluation pursuant to section 39-71-1001 et.seq., MCA.

Section 39-71-116(20), MCA defines wages as "the average gross earnings received by the employee at the time of the injury for the usual hours of employment in a week, and overtime is not to be considered . . . " The insurer argues, in the second issue, that section 39-71-116(20), MCA should be strictly construed so that the claimant's regular overtime hours are not considered when computing her rate of compensation. The claimant argues that the words "usual hours of employment" and "overtime" as used in this statute are conflicting when a person's usual hours includes overtime hours. The court below acknowledged the conflict and concluded that the statute was ambiguous because its reference to overtime does not indicate whether this means overtime earnings are not to be considered, overtime hours are not to be considered, or both. We agree that the statute is ambiguous under these circumstances.

When construing a statute, every provision must be given meaning or effect if possible. State v. District Court of the First Judicial Dist. in and for Lewis and Clark County (1926), 77 Mont. 290, 250 P. 973. Further, the Court is under a duty to construe the Workers' Compensation Act liberally, section 39-71-104, MCA, and resolve ambiguity in

favor of the injured worker. Gaffney v. Industrial Accident Board (1955), 129 Mont. 394, 287 P.2d 256. The interpretation that gives effect to all the provisions and also resolves the ambiguity in favor of the injured worker is one which includes overtime hours that are part of a claimant's usual hours of employment at the straight pay rate in the benefit calculation. Thus, overtime will generally be excluded in determining the usual hours of employment. However, if the work record shows that the employer hired the claimant expecting overtime work and the claimant actually worked overtime on a consistent and regular basis, as in the case at bar, then that overtime becomes part of the usual hours of employment. The overtime will not be included at the premium rate, but as extra hours at regular pay.

We construe section 39-71-116(20), MCA to mean overtime premium earnings are not considered in calculating wages and that the phrase "usual hours of employment" excludes overtime hours from the calculation unless the overtime is consistently and regularly part of the claimant's work record, as in the case at bar.

The final issue concerns the penalty assessed for the unreasonable conduct of the insurer. Section 39-71-2907, MCA provides:

> "When payment of compensation has been unreasonably delayed or refused by an insurer, either prior or subsequent to the issuance of an order by the workers' compensation judge granting a claimant compensation benefits, the full amount of the compensation benefits due a claimant, between the time compensation benefits were delayed or refused and the date of the order granting a claimant compensation benefits, may be increased by the workers' compensation judge by 20%. The question of unreasonable delay or refusal shall be determined by the workers' compensation judge, and such a

7

> finding constitutes good cause to
> rescind, alter, or amend any order,
> decision, or award previously made in the
> cause for the purpose of making the
> increase provided herein."

Whether the insurer's conduct was unreasonable is a factual question and on appeal, a finding of unreasonableness will not be overturned if supported by substantial evidence. Wight v. Hughes Livestock Co., Inc. (Mont. 1981), 634 P.2d 1189, 38 St.Rep. 1632. A review of the record shows sufficient evidence was presented to support this finding. We therefore will not overturn the Workers' Compensation Court's judgment awarding claimant the 20% penalty for the insurer's unreasonable actions.

The decision of the Workers' Compensation Court is affirmed.

_____
Justice

We concur:

_____

_____

_____

_____
Justices