No. 89-504

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

JOSEPH M. WILHELM,

      Claimant and Appellant,

   v.

OWENS ENTERPRISES, INC.,

      Employer,

   and

EBI/ORION GROUP,

      Defendant and Respondent.

APPEAL FROM:   The Workers' Compensation Court,
                The Honorable Timothy Reardon, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Kenneth E. O'Brien, Hash, O'Brien and Bartlett,
          Kalispell, Montana

      For Respondent:

          Charles E. McNeil, Missoula, Montana

Submitted on Briefs:  January 18, 1990

Decided:  April 5, 1990

Filed:

_____
       /Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

Joseph Wilhelm, claimant below, appeals the decision of the Workers' Compensation Court holding that the defendant insurer, EBI/Orion Group, properly terminated his temporary total occupational disease benefits. We find that the decision of the Workers' Compensation Court did not comport with the principles set forth in Coles v. Seven Eleven Stores (1985), 217 Mont. 343, 704 P.2d 1048, and we therefore reverse and remand.

Wilhelm presents two issues for review:

1. Did the Workers' Compensation Court err in concluding that Wilhelm's benefits were properly terminated pursuant to the Coles decision?

2. Did the Workers' Compensation Court err in denying Wilhelm's motion to exclude evidence that did not form the basis for terminating Wilhelm's benefits?

At the time of trial claimant Joseph M. Wilhelm was 59 years old. Wilhelm, whose formal education ended when he graduated from high school in 1947, has spent most of his life working in the woods. For the past fifteen years Wilhelm worked for Owens Enterprises, primarily running a chainsaw, but at times skidding logs or piling brush.

During extremely cold weather in November of 1985, Wilhelm cut frozen timber which caused his saw to "hang up" and vibrate excessively. The next day Wilhelm first noticed numbness is his right hand and fingers, but he continued to work until February, 1986 despite the chronic numbness.

2

Wilhelm consulted Dr. Bruce A. Allison on March 4, 1986. Dr. Allison advised Wilhelm that the muscle weakness and atrophy Wilhelm experienced in his right hand was related to his operating a chainsaw. Dr. Allison referred Wilhelm to Dr. Robert D. Schimpff, who diagnosed Wilhelm's condition as advanced right ulnar neuropathy related to occupational exposure to a vibrating power saw.

During the period April 1, 1983 through April 1, 1986, the employer, Owens Enterprises, Inc., was enrolled under Compensation Plan II and its insurer was EBI/Orion Group. The coverage period included Wilhelm's last day of work and last exposure to use of a chainsaw while employed with Owens.

Wilhelm notified his woods boss, Brandon Owens, of his condition on April 8, 1986. This was his employer's first notification. On April 10, 1986, Wilhelm filed a claim for compensation with EBI. EBI accepted liability for Wilhelm's condition as an occupational disease and paid benefits on a bi-weekly basis. EBI also advanced Wilhelm $5,000 under the Occupational Disease Act by Wilhelm's Petition for Partial Lump Sum Settlement. EBI employed Vocational Resources, Inc. to assist in retraining and securing employment for Wilhelm.

Dr. Allison found that Wilhelm's condition had stabilized and maximum healing had been achieved as of August 24, 1987. In an August 28, 1987 letter, EBI informed Wilhelm that his benefits would be terminated in fourteen days since Dr. Allison had approved Wilhelm to return to work, though not in the woods running a chainsaw. Attached to the letter were a copy of Dr. Allison's

report determining Wilhelm could return to work with restrictions and two job analyses signed by Dr. Allison. Two weeks later Wilhelm's benefits were in fact terminated.

The termination was based on the two job analyses concerning employment as a janitor with Kalispell School District No. 5 and with Doug Johns Building Systems, also in Kalispell. Dr. Allison had signed both job analyses. Both analyses indicated a great amount of time spent on the jobs required grasping. Wilhelm's condition made grasping difficult and painful. In a Physical Activities Checklist completed for Vocational Resources, Dr. Allison noted that Wilhelm should not lift over 25 pounds with his right arm nor use vibratory tools and should never grasp with his right hand. In addition, the Johns Building Systems job analysis required one to two years experience, which Wilhelm did not have. Vocational Resources was unable to find Wilhelm a job.

Before considering the issues presented we must first address a procedural matter. Following a trial, the hearings examiner entered Findings of Fact and Conclusions of Law and a Proposed Judgment which were adopted by the Workers' Compensation Court by an order dated August 10, 1989. After the Workers' Compensation Court entered its judgment, Wilhelm filed a Motion for Rehearing. The Workers' Compensation Court denied the motion, finding that the requirements for rehearing under Montana law were not met and that the record supports the Judgment issued on August 10, 1989. Wilhelm then filed his Notice of Appeal to this Court from the Workers' Compensation Court's Order denying his Motion for Rehearing.

4

EBI argues that this Court cannot review the findings or judgment since they were not specifically appealed from. Rule 4(c) of the Montana Rules of Appellate Procedure states that the notice of appeal shall designate the judgment, order or part thereof appealed from. However, the appeal will not be dismissed for informality of form or title of the notice of the appeal. Rule 4(c), M.R.App.P.

It is correct that the Notice of Appeal was from the Order denying the Motion for Rehearing rather than from the findings and judgment. While we encourage accuracy and admonish attorneys to be precise, the misnomer contained in the Notice of Appeal is not fatal to the instant appeal. In the appeal before this Court the issues raised are substantially the same as the issues appellant raised in his Motion for Rehearing. We will therefore treat the appeal as an appeal from the August 10, 1987 Workers' Compensation Court Order adopting the Findings of Fact and Conclusions of Law of the hearings examiner and entering Judgment. This is in accordance with the philosophy of modern appellate practice that technical defects of procedure should not bar a party from access to the courts. Tefft v. Tefft (Mont. 1981), 628 P.2d 1094, 1097, 38 St.Rep. 837, 840 (citing J.C. Penny, Inc. and F.W. Woolworth Co. v. Employment Security Division (Mont. 1981), 627 P.2d 851, 38 St.Rep. 694).

> ISSUE I.    Did the Workers' Compensation Court err in concluding that Wilhelm's benefits were properly terminated pursuant to the Coles decision?

The standard of review applied to decisions of the Workers'

5

Compensation Court is whether there is substantial credible evidence to support the findings and conclusions of the Workers' Compensation Court. Sharkey v. Atlantic Richfield Co. (Mont. 1989), 777 P.2d 870, 872, 46 St.Rep. 1169, 1171. We will not substitute our judgment for that of the Workers' Compensation Court. Schrapps v. Safeway Stores, Inc. (Mont. 1989), 777 P.2d 887, 888, 46 St.Rep. 1330, 1331.

Section 39-71-609, MCA, controls termination of benefits by an insurer. The statute in effect at the time read:

> If an insurer determines to deny a claim on which payments have been made under 39-71-608 during a time of further investigation or, after a claim has been accepted, terminates biweekly compensation benefits, it may do so only after 14 days' written notice to the claimant, the claimant's authorized representative, if any, and the division. However, if an insurer has knowledge that a claimant has returned to work, compensation benefits may be terminated as of the time the claimant returned to work.

Section 39-71-609, (1987) MCA. The August 28, 1987 letter which EBI sent to Wilhelm contained the requisite fourteen-day notice.

Additionally, the Workers' Compensation Court found that EBI had met the four requirements it had set out in its decision in Coles v. Seven Eleven Stores, Docket No. 2000 (decided November 24, 1984) which this Court affirmed in Coles v. Seven Eleven Stores (1985), 217 Mont. 343, 704 P.2d 1048. The Workers' Compensation Court's decision in Coles requires that before temporary total benefits may be terminated the insurer has the duty to investigate the claimant's condition and obtain the following information concerning the claimant's ability to return to work:

6

(1) a physician's determination that the claimant is as far restored as the permanent character of his injuries will permit;

(2) a physician's determination of the claimant's physical restrictions resulting from an industrial accident;

(3) a physician's determination, based on his knowledge of the claimant's former employment duties, that he can return to work, with or without restrictions, on the job on which he was injured or another job for which he is fitted by age, education, work experience and physical condition;

(4) notice to the claimant of receipt of the report attached to a copy of the report.

Coles, Workers' Compensation Court, Docket No. 2000, at p. 11.

The Workers' Compensation Court found that the four requirements of the Coles decision have been met by the fact (1) Dr. Allison did find that maximum healing had been reached by August 24, 1987; (2) Wilhelm could return to work as a janitor or custodian with restrictions that he only perform light work; (3) consideration was given to the essential factors for other employment; and (4) notice was given to the claimant Wilhelm with a copy of the reports which were the basis of the termination.

Wilhelm agrees that EBI's August 28 letter meets Coles requirements (1), (2) and (4), but disputes the Workers' Compensation Court's conclusion as to requirement (3). The Workers' Compensation Court held that Dr. Allison's release of Wilhelm to work as a janitor or custodian was supported by the evidence presented at the hearing.

The Workers' Compensation Court's conclusion was apparently based on the two job analyses for janitor position signed by Dr.

7

Allison and attached to the August 28 letter, one with School District No. 5 and the other with Johns Building Systems. However, in his deposition Dr. Allison testified that he was only signing off on the job analyses with respect to the physical requirements of the job. No opinion was rendered as to the experience or education needed to obtain either of the jobs.

The third Coles requirement incorporates the notion that if a claimant is unable to return to the job on which he was injured, the claimant must be released to work at another job for which he is fitted by "age, education, work experience and physical condition." Dr. Allison testified that he signed off with respect only to Wilhelm's physical condition. All other evidence adduced at trial indicated Wilhelm would be precluded from custodial positions by virtue of his age, education and work experience. Wilhelm is a 59-year-old high school graduate whose work experience has been almost exclusively limited to running a chainsaw in the woods. Dr. Allison's report released Wilhelm to do "light work with non vibrating machinery." (Emphasis supplied by Dr. Allison.) Dr. Allison's report was the only information EBI had available to it that Wilhelm, by reason of his age, education, experience and physical condition, could be competitive in the labor market.

The evidence produced at trial does not establish that Wilhelm, by reason of his age, education and work experience, would be competitive in the positions listed on the two job analyses signed by Dr. Allison. Wilhelm has no previous experience or training as a janitor or custodian. Clifford Larson, EBI's vocational rehabilitation expert, testified that Wilhelm would not

8

be competitive for the position with Johns Building Systems since the job analysis required two years of experience. Larson did state that he thought Wilhelm could be competitive for the position with School District No. 5 but never spoke with any one at the school district concerning Wilhelm's possible employment there.

By contrast Wilhelm presented testimony of vocational rehabilitation expert Dan Schara. Schara testified he spoke with School District No. 5 officials who were of the opinion that Wilhelm would not be competitive because he would have difficulty operating many of the machines school janitors use since the machines (as well as other duties) require the use of two good hands and appropriate finger dexterity. Moreover, School District No. 5 has hundreds of applicants for such positions and school officials expressed the opinion that Wilhelm by virtue of his lack of experience and age would not even be considered for a janitorial position. Additionally, the job analysis for the School District No. 5 position states that the job involves grasping with the right hand four to five hours per day.

Larson's testimony and Dr. Allison's signing off on the job analyses seem to be the basis for the Workers' Compensation Court's holding that the Coles requirements were met and Wilhelm's benefits were, therefore, properly terminated. However, as we have pointed out, Dr. Allison testified he signed off only as to Wilhelm's physical condition to work as a janitor, not as to Wilhelm being fitted by age, education or work experience to work as a janitor. Furthermore, Larson admitted Wilhelm would not be competitive for the janitor job with Johns Building Systems. Larson's opinion that

9

Wilhelm would be competitive for the School District No. 5 position is suspect in light of the fact that Wilhelm is 59 years old, has no training or experience as a janitor, and would have difficulty operating many of the machines school janitors use. Such testimony indicates this would prevent Wilhelm from being hired by the School District.

For the foregoing reasons greater weight must be accorded the testimony of vocational rehabilitation expert, Schara, who spoke with school officials regarding employment of Wilhelm, than to the testimony of expert Larson, who did not speak with school officials. This established that no reasonable prospect of employment in the normal labor market exists for Wilhelm. As we have previously held:

> "To establish the existence of no reasonable prospect of employment in the normal labor market, a claimant must introduce substantial credible evidence of (1) what jobs constitute his normal labor market, and (2) a complete inability to perform the employment and duties associated with those jobs because of his work-related injury." (Citations omitted.) Once a claimant presents evidence showing there is no reasonable prospect of employment, "the burden of proof shifts to the employer to show that suitable work is available."

Coles, at 347, 704 P.2d at 1051 (quoting Metzger v. Chemetron Corp. (1984), 212 Mont. 351, 355 and 356, 687 P.2d 1033, 1035 and 1036).

Dr. Allison's report releasing Wilhelm to work contained restrictions such that Wilhelm could not return to his normal labor market, cutting timber with a chainsaw. Testimony regarding the janitor positions listed in the two job analyses signed by Dr. Allison, showed Wilhelm's complete inability to perform the

10

employment and duties associated with those jobs because of his work-related injury.

In the case at bar, EBI failed to meet the burden of showing that suitable work is available for Wilhelm. All evidence presented tends to show there are no jobs in the local labor market for which Wilhelm is fitted by age, education, work experience and physical condition as mandated by the Coles requirements. The judgment of the Workers' Compensation Court should be reversed and judgment entered in favor of Wilhelm.

Because we reverse the Workers' Compensation Court's judgment on the first issue, it is not necessary to reach the second issue.

We reverse and remand to the Workers' Compensation Court for proceedings consistent with this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

11