JUSTICE TRIEWEILER
specially concurring.
I concur with the majority opinion in order to respond to the dissenting opinion without unnecessarily cluttering this Court’s decision.
It is difficult for me to understand the reason for the dissent or the point that it makes.
The author agrees that the Department’s hearing examiner erred when he concluded that, even if the other elements of § 39-71-612, MCA (1979), are satisfied, an award of attorney fees is discretionary.
The author agrees that the Workers’ Compensation Court erred when it concluded that § -612 did not apply to settlements.
Certainly the dissent does not disagree that there was a controversy over the amount of benefits due the claimant. The State Fund terminated Madill’s temporary total disability benefits; decided he was only entitled to partial disability benefits; offered him 300 weeks of partial disability benefits at the rate of $99 a week; and refused, in spite of repeated demands, to restore him to a total disability status. During all of that time, the claimant, through his attorney, contended that he was permanently totally disabled and entitled to lifetime benefits at the rate of $154.63 per week. How could that disagreement not give rise to a controversy?
*471 Certainly the dissent does not disagree that this case was settled. Both parties signed a petition for approval of their settlement agreement.
Finally, the dissent cannot disagree that the amount for which the claim was settled was greater than the amount paid or tendered by the State Fund. The State Fund offered to settle claimant’s case for benefits equal to $29,700. After protracted delay, substantial expense, and time-consuming effort on the part of claimant’s attorney, he ultimately settled his claim for $225,000. Whether there were intervening offers, and how many intervening offers were made, is irrelevant. The fact that there was a controversy, the controversy was settled, and the amount received in settlement was greater than the amount paid or tendered, is all that was necessary pursuant to the plain language of § 39-71-612, MCA (1979), to warrant reimbursement to the claimant for the attorney fees and costs that he incurred to compel the State Fund to pay him the benefits to which he was entitled in the first place.
On a strictly legal basis, aside from what has been discussed so far in this concurring opinion, nothing further is necessary. However, because of the nature of the rhetoric in the dissenting opinion, the following response is made to the dissent’s factual allegations. I will try to confine the response to specific accusations by the dissent that facts were reported erroneously in the majority opinion. It is impossible to respond to general statements to the effect that certain facts have been omitted, some facts are erroneous, and others are incomplete.
Neither will I try to respond to complaints by the dissent that the majority opinion includes editorial comments. Matters of style are not normally the focus of debate between the majority and minority on this Court, and I would prefer to keep it that way.
First, reference to the Coles decision is not extraneous to the issues raised by the parties on appeal. The State Fund terminated Madill’s temporary total disability benefits. He demanded that they be reinstated. The State Fund argued on appeal that that termination did not give rise to a controversy within the meaning of § -612 because Dr. Sousa’s report established that he had reached maximum healing and could perform some kind of sedentary labor. Therefore, the State Fund’s position was that it had a right to reduce his benefits until he proved that there was no occupation to which he could return. In Coles, which had been decided by the Workers’ Compensation Court prior to the date of the State Fund’s action, the Workers’ Compensa *472 tion Court held, and we later affirmed, that once an injured employee reaches maximum healing and cannot return to his normal labor market, he has established the probability of “no reasonable prospect of employment” within the meaning of the total disability statute, and therefore, the burden shifts to the insurer to demonstrate that other suitable work is available. In order to so do, the insurer must establish the following facts:
1. A physician’s determination that claimant is as far restored as the permanent character of his injuries will permit;
2. A physician’s determination of the claimant’s physical restrictions;
3. A physician’s determination that claimant can return to some form of employment based on evidence that the physician is familiar with the duties of that employment; and
4. Notice to the claimant that the physician’s report has been received, with a copy of the report attached to the notice. Wood v. Consolidated Freightways (1991), 248 Mont. 26,30,808 P.2d 502,505; Coles v. Seven-Eleven Stores (1985), 217 Mont. 343, 347-48, 704 P.2d 1048, 1051.
The point of the Coles reference was to illustrate that this was not simply a situation where the claimant had not documented his temporary total disability. That situation had been documented to the extent that claimant could at that point. Further documentation, which was prerequisite to termination of total disability benefits, was the burden of the State Fund. Likewise, the only purpose for referring to the mediator’s recommendation was to illustrate that the State Fund was aware of its responsibilities pursuant to the Coles decision, and chose not to comply with them. Therefore, this was not a simple situation where the State Fund was simply awaiting further documentation by the claimant. It was a controversy created by the State Fund’s failure to perform its own obligations. Nothing else about the mediator’s recommendation was relevant to the issues raised in this case. It was not necessary that Madill prove the State Fund acted unreasonably in order to recover attorney fees and costs pursuant to § -612, as it existed in 1979.
Next, the dissent asserts that the majority opinion mischaracterizes the State Fund’s February 18, 1991, letter to Madill’s attorney. The majority opinion states that the State Fund’s offer was based on benefits to which Madill was entitled until age sixty-five. The dissent contends that the offer was based on benefits to which Madill was entitled over the remainder of his lifetime. Which contention is *473 correct is a matter of interpretation. One conclusion is supported by the actual dollar amounts involved, another conclusion could arguably be arrived at based on the language in the letter. However, neither conclusion is particularly relevant. Under either scenario, Madill was offered less than he was entitled to and less than he ultimately received in settlement. The total of benefits to which he was entitled until age sixty-five was $120,728.40. The total amount over his lifetime was $225,359.68. The State Fund’s offer was $90,000, and therefore, did not equal either amount. If the State Fund’s offer was based on lifetime benefits, then why was it necessary to calculate what he was entitled to until age sixty-five? The point, however, is that this interpretive disagreement is totally irrelevant to the majority’s ultimate conclusion.
Neither is it relevant that, at some point later in the negotiations, the State Fund’s settlement offer was increased by twenty percent. Any increase followed the original controversy, was another offer of final settlement, and only resulted from the efforts of Madill’s attorney.
Next, the dissent finds some significance to the fact that a portion of the lump sum advance which was made by the State Fund was for the purpose of paying attorney fees. The suggestion is that an award of attorney fees, pursuant to § -612, would duplicate what has already been paid. That suggestion shows a complete misunderstanding of the purpose for Madill’s petition and the existence of § -612.
The attorney fees which have been paid in this case were paid from a conversion of Madill’s future disability benefits which are necessary for his and his family’s support. They were not paid by the State Fund, as required by § -612. They were paid by Madill. The purpose of this petition is to reimburse him for attorney fees that he had to pay out of money that is necessary to pay for his groceries, his transportation, and his home because the expense was only necessary due to the State Fund’s denial of the benefits to which he was entitled. The dissent is absolutely correct, however, when it observes that the majority fails to see any relevance in the fact that Madill has previously received a lump sum advance of future disability benefits in order to pay his attorney. It is not that those facts are “inconvenient”; it is simply that they have nothing to do with the issues in this case.
Next, the dissent suggests that the August 1989 report from National Rehabilitation Consultants was the first vocational report sent to the State Fund which documented that Madill was not employable in his normal labor market. The suggestion that it was Madill’s burden to provide any vocational report ignores the Coles *474 requirements previously set forth in this opinion. However, it also ignores the fact that on May 25, 1988, approximately one week after receiving notice that his total disability benefits would be terminated, Madill’s attorney forwarded a report from National Rehabilitation Consultants which concluded that placement of Madill in employment would be “very difficult, if not impossible.” It also ignores the fact that by July 6, 1989, Dr. Sousa had notified the State Fund that he doubted Madill was employable in a regular occupation. It is for these reasons that any additional vocational rehabilitation reports were cumulative and did not provide information in addition to what the State Fund already knew very early in the course of its controversy over the amount of benefits owed to Madill. It is because of these facts that the majority opinion is absolutely correct when it states that benefits were ultimately paid based on the same information which had been in the State Fund’s possession while they were denied.
Finally, the dissent disagrees with the Court’s conclusion that the lump sum conversion, which was ultimately paid to Madill, was greater than any amount paid or tendered by the insurer. The dissent suggests that further facts are necessary. Well, here they are.
First of all, no lump sum was ever paid or tendered to Madill before the settlement that was finally agreed upon. As we noted in Hilbig v. Central Glass Co. (1991), 249 Mont. 396, 406-08, 816 R2d 1037, 1043-45, there is a big difference between an offer conditioned on the waiver of some right which does not have to be waived, and a simple payment or tender of benefits. However, even if we assume, for purposes of argument, that an offer was sufficient, $29,700 is less than an advance of $69,000 with an agreement that the remainder of Madill’s lifetime total disability benefits would be paid periodically. In other words, $225,000 is worth more than $30,000. It is also more than $90,000, and finally, if the last offer is relevant, it is worth more than $108,000.
The dissent suggests that because Madill agreed to something less than he had originally demanded, § -612 is, for some reason, not applicable. However, as pointed out in the majority opinion, there is no condition in § -612 which requires that before a claimant is entitled to attorney fees, he must recover by either settlement or award the amount of his original demand. The condition to attorney fees is simply that he recover more than was paid or tendered by the insurer.
The dissent concludes that it is not necessary to overrule Lasar or Komeotis because they did not deal with the issue with which this *475 case is concerned. Presumably, the Workers’ Compensation Court would disagree. Lasar is one of the opinions relied on by the Workers’ Compensation Court for its conclusion that § 39-71-612, MCA (1979), did not apply to cases which were settled. Komeotis is one of the opinions relied on by the author of the dissent when she authored the Field case. If it is so clear that Komeotis is not applicable to the facts in this case, then it is curious why it was relied on in Field to support the exact opposite conclusion arrived at in this case.
In summary, while the dissent nitpicks the majority’s interpretation of records which were admitted without objection, and facts which were agreed upon or found by the hearing examiner, there is no suggestion in the dissent how any of these disagreements are relevant to the ultimate outcome of this case. The statute we have been asked to construe is very clear and straightforward. It has been applied in the manner that it was written, and creative arguments to the contrary notwithstanding, that is what this Court is obliged to do.