No. 00-230

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 310

302 Mont. 442

14 P.3d 1234

CARL WALLACE,

Plaintiff and Appellant,

v.

PROFESSIONAL FARM SYSTEMS,

Employer, Defendant, and Respondent,

and

STATE COMPENSATION INSURANCE FUND,

Insurer, Defendant, and Respondent.

APPEAL FROM: Montana Workers' Compensation Court,

The Honorable Mike McCarter, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Randall O. Skorheim, Skorheim Law Office, Great Falls, Montana

For Respondent:

Greg Overturf, State Compensation Insurance Fund, Helena, Montana

Submitted on Briefs: July 20, 2000
Decided: December 7, 2000

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

¶1 The Claimant, Carl Wallace, filed a petition in the Workers' Compensation Court seeking retroactive reinstatement of total disability benefits from the Defendant, State Compensation Insurance Fund. The Workers' Compensation Court denied Wallace's petition and Wallace appeals from that decision. We affirm the judgment of the Workers' Compensation Court.

¶2 The sole issue raised on appeal is:

¶3 Did the Workers' Compensation Court err when it held that the State Fund was not required to comply with the steps set forth in *Coles v. Seven Eleven Stores* (1985), 217 Mont. 343, 704 P.2d 1048, or the 14-day notice requirement of § 39-71-609, MCA (1981) prior to converting Wallace's temporary total disability benefits to permanent partial disability benefits?

## FACTUAL BACKGROUND

¶4 At the time of his work-related injury, the Claimant, Carl Wallace was employed by Professional Farm Systems, primarily "selling grain handling equipment and storage."

¶5 On May 21, 1982, he suffered a herniated inter-vertebral disc in his lower back while delivering a grain bin to a farmer. Wallace filed a claim with the Respondent, State Fund. The Fund accepted liability and began paying him temporary total disability benefits in 1983. Wallace continued to experience pain. He was evaluated at the Mayo Clinic in 1985 and 1993. The diagnosis was an early onset of arachnoiditis causing fixation of the lumbar roots, leading to friction with spine movement and radicular pain.

¶6 In May 1985, Wallace attempted to go back to work. The State Fund converted his benefits to permanent partial disability benefits, but resumed paying him total temporary disability benefits when he was forced to quit in November 1985 due to his back injury. In 1986, Wallace received training to be a real estate salesperson. His doctors determined that real estate would provide a healthy working environment within his physical limitations. Additionally, in November 1986, the State Fund requested that Dr. David Friedrick examine Wallace to evaluate his medical impairment. Dr. Friedrick found that he had reached maximum medical improvement and provided a 5 percent impairment rating.

¶7 Wallace obtained his realtor's license and began working at Bison Realty on April 2, 1987. After Wallace received his first commission from a real estate sale, the State Fund reduced his payments to the partial disability rate. The State Fund admitted that Friedrick's report affected this decision but that they had not notified Wallace of Friedrick's report. He did not receive notice of Dr. Friedrick's diagnosis until 1997 when it was produced as part of the discovery in this proceeding.

¶8 After petitioning the Workers' Compensation Court for retroactive payments of his temporary total disability benefits, Wallace and the State Fund agreed to allow the Workers' Compensation Court decide the issues presented as a matter of law. Wallace filed a Motion for Summary Judgment to which the State Fund responded. The Court denied Wallace's motion, and held that the State Fund properly reduced Wallace's benefit rate.

## DISCUSSION

¶9 Did the Workers' Compensation Court err when it held that the State Fund was not required to comply with the steps set forth in *Coles v. Seven Eleven Stores* (1985), 217 Mont. 343, 704 P.2d 1048, or the 14-day notice requirement of § 39-71-609, MCA (1981), prior to converting Wallace's temporary total disability benefits to permanent partial disability benefits?

¶10 The issues in this case were submitted to the Workers' Compensation Court as issues of law. We review the Workers' Compensation Court's conclusions of law to decide whether they were correctly decided. *Stordalend v. Ricci's Food Farm* (1993), 261 Mont. 256, 258 862 P.2d 393, 394.

¶11 Wallace first contends that the State Fund failed to comply with the third and fourth

requirements set out in *Coles.* In *Wood v. Consolidated Freightways, Inc.* (1991), 248 Mont. 26, 30, 808 P.2d 502, 505, this Court clarified the *Coles* criteria and held that before an insurer can reduce benefits it must obtain:

> (1) a physician's determination that the claimant is as far restored as the permanent character of his injuries will permit, (2) a physician's determination of claimant's physical restrictions resulting from an industrial accident, (3) a physician's determination based on his knowledge of the claimant's former duties, that the claimant can return to work, with or without restrictions, on the job for which he is fitted by age, education, work experience, and physical condition and (4) notice to the claimant . . . .

¶12 Wallace contends that the State Fund violated the *Coles* requirements because it failed to inform Dr. Friedrick of Wallace's job history. In addition, Wallace points out that he was not notified of Dr. Friedrick's medical opinion that Wallace had reached maximum medical recovery. Wallace now claims that these omissions by the State Fund require that it continue to pay Wallace total disability benefits until the State Fund complies with the *Coles* requirements.

¶13 In response, the State Fund contends that it is not required to comply with the *Coles* criteria because Wallace returned to work as a real estate salesperson in 1987. In *Larson v. CIGNA Insurance Company* (1996), 276 Mont. 283, 915 P.2d 863, we held that "the insurer can rightfully terminate temporary total benefits without proceeding with an investigation under § 39-71-609 . . . [s]ince the duty of investigation was statutorily discharged, the *Coles* criteria do not apply." *Larson*, 276 Mont. at 294, 915 P.2d at 870. Our decision in *Larson* applies when a claimant returns to work.

¶14 The record in this case establishes that Wallace did return to work. He began work as a real estate agent in 1987. Since then, he worked an average of 30 hours per week. In addition, he did spot jobs for the U.S.D.A. from 1987 to 1997. Therefore, we conclude that the Workers' Compensation Court did not err when it held that the State Fund was not required to comply with the *Coles* procedures before reducing Wallace's benefit rate.

¶15 Next, Wallace contends that the State Fund failed to comply with the statutory requirements set out in § 39-71-609, MCA (1981) which requires that "an insurer must give 14 days' written notice to the claimant before reducing benefits from total to partial." Section 39-71-609, MCA (1981). However, Wallace overlooks the additional provision

which states that "benefits may be terminated as of the time the claimant has returned to work." Section 39-71-609(1), MCA (1981). Wallace returned to work as a real estate agent in April 1987. His benefits were not reduced until he realized income from that work. Therefore, we conclude that the 14-day notice requirement in § 39-71-609(1), MCA (1981) does not apply to the reduction of his benefits. Contrary to Wallace's argument, we conclude that the exception to the 14-day notice requirement upon which we base our decision does not require that Wallace be "employed" or earn "wages" as defined in the Act.

¶16 For these reasons, we affirm the judgment of the Workers' Compensation Court.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ J. A. TURNAGE

/S/ JAMES C. NELSON

/S/ W. WILLIAM LEAPHART

/S/ JIM REGNIER