No. 87-365

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

JODY MC KINLEY,

      Claimant and Respondent,

  -vs-

AMERICAN DENTAL MANUFACTURING COMPANY,

      Employer,

  and

STATE COMPENSATION INSURANCE FUND,

      Defendant and Appellant.

APPEAL FROM:  Workers' Compensation Court of the State of Montana
              In and For the Area of Missoula
              The Honorable Timothy Reardon, Judge Presiding

COUNSEL OF RECORD:

    For Appellant:

        Oliver H. Goe; Browning, Kaleczyc, Berry & Hoven, P.C.
        Helena, MT

    For Respondent:

        Julio K. Morales; Morales & Volinkaty, Missoula, MT

Submitted:  March 4, 1988

Decided:  May 17, 1988

Filed:  MAY 1 7 1988

*Ethel M. Harrison*

Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

This is an appeal of the amount of attorney fees awarded by the Workers' Compensation Court in Ms. McKinley's claim for disability benefits. We reverse and remand to the Workers' Compensation Court.

Appellant State Compensation Insurance Fund (State Fund) states the issue as whether the lower court erred in ignoring offers of settlement made prior to trial in determining the attorney fee awardable under § 39-71-612, MCA (1983).

The claimant Ms. McKinley suffered an industrial accident to her right hand, arm, and shoulder in January 1984. The State Fund paid temporary total disability benefits until January 1986, when Ms. McKinley started to work for a new employer. At that time, the State Fund terminated temporary total disability benefits and began paying Ms. McKinley permanent partial benefits.

The complaint before the Workers' Compensation Court was filed because of a disagreement on the calculation of Ms. McKinley's permanent partial disability benefits. Ms. McKinley successfully argued that her benefits should be calculated under § 39-71-705, MCA. The court awarded her 500 weeks of permanent partial disability benefits at the rate of $97.87 per week, or a total of $48,935. However, the court noted that since Ms. McKinley's benefit rate is based on actual lost earnings, the rate may change. The court ruled that either Ms. McKinley or the State Fund may return once a year to recompute the difference between current wages and pre-injury wages. The court therefore denied Ms. McKinley's request for attorney fees in a lump sum but ordered them paid as Ms. McKinley receives her benefits.

The Workers' Compensation Court computed Ms. McKinley's attorney fee based on the difference between the amount

2

awarded and $9,695, which it determined was the "floor offer" by the State Fund. That determination is appealed.

Did the lower court err in ignoring offers of settlement made prior to trial in determining the attorney fee awardable under § 39-71-612, MCA?

Section 39-71-612, MCA (1983), governs the award of attorney fees in this case. That statute provided, in relevant part:

> (1) If an employer or insurer pays or tenders payment of compensation under chapter 71 or 72 of this title, but controversy relates to the amount of compensation due and the settlement or award is greater than the amount paid or tendered by the employer or insurer, a reasonable attorney's fee as established by the division or the workers' compensation judge if the case has gone to a hearing, based solely upon the difference between the amount settled for or awarded and the amount tendered or paid, may be awarded in addition to the amount of compensation.

As amended in 1985, the words "based solely upon the difference between the amount settled for or awarded and the amount tendered or paid" are eliminated from the statute. However, we must apply the statute as in effect on the date of injury. Wight v. Hughes Livestock Co., Inc. (1983), 204 Mont. 98, 664 P.2d 303. Our key question is the amount of a reasonable attorney fee when the amount of the fee is "based solely upon the difference between the amount settled for or awarded and the amount tendered or paid."

The correspondence between Ms. McKinley's attorney and the State Fund prior to filing of the claim with the Worker's Compensation Court can be summarized as follows:

> On August 16, 1985, Ms. McKinley's attorney Mr. Morales wrote to the State Fund, making a demand

3

for payment of benefits for permanent partial disability totalling $57,400.

On January 29, 1986, the State Fund wrote to Mr. Morales. The State Fund advised that because Ms. McKinley had returned to work, payments would begin at $113.07 per week under § 39-71-703, MCA, for the diminution of wages. The Fund also mentioned an impairment rating of 15% of the whole person and asked that Mr. Morales contact his client and advise whether she wanted benefits under § 703 or § 705. The Fund pointed out that benefits under § 705 would amount to $138.50 per week for not to exceed 75 weeks.

On February 7, 1986, Mr. Morales wrote to the State Fund. He objected to changing the benefits from temporary total to permanent partial and made a demand for temporary total benefits. Also, demand was made for the payment of the minimum indemnity benefit based on the 15% impairment rating – $10,385.50 was recognized in the Fund letter. Mr. Morales suggested an agreement that Ms. McKinley was entitled to the maximum benefits of $138.50 for 500 weeks for a total of $69,250. He asked for settlement on that amount.

On February 27, 1986, the State Fund replied to Mr. Morales' letter of February 7 stating that it interpreted the letter to mean that Ms. McKinley would like to have benefits paid under § 705. Therefore, 14 days from the date of the letter wage loss benefits under § 703 would be discontinued and one month after that, under § 709 the State Fund would begin payment of "the undisputed liability resulting from the impairment rating." (Note that this in fact is what the Fund did in its April 28 letter.) The State Fund also advised that it did not believe that Ms. McKinley was entitled to 500 weeks at $138.50 as its calculations showed that even if she were to receive a 5% pay increase each year for the past 2 years she would not qualify for the $138.50. Finally, the Fund noted that Mr. Morales originally had requested settlement for $57,400. The State Fund rejected that offer for lack of sufficient information and observed that the demand had gone up $12,000.

4

On March 4, 1986, Mr. Morales wrote to the State Fund. Mr. Morales outlined his theory of loss of earning capacity at 75 weeks at $138.50 per week plus 425 weeks at $137.33 or a total of $68,762.67. He then indicated his client was willing to accept the foregoing in full compensation of the permanent partial disability benefits.

On March 21, 1986, the State Fund wrote to Mr. Morales. This letter contained the words, "our offer of settlement on this case is $36,927.80." The next paragraph described how the client was entitled to 70 weeks of partial benefits at $138.50 per week for a total of $9,695. The next paragraph pointed out that the loss of hourly wages translates to $129.68 per week under § 703 so that for the remaining 210 weeks, she would be entitled to $27,232.80. These two figures together of course total the offer of settlement of $36,927.80.

On April 28, 1986, the State Fund wrote to Mr. Morales. In this letter, the State Fund mentioned that Ms. McKinley was to receive benefits for 70 weeks at $138.50 per week payable biweekly from April 1, 1986, which was the date of her first entitlement to indemnity benefits under § 705. They also advised that 3 weeks had passed so she was entitled to a $415.50 lump sum payment. In addition the Fund stated that if Ms. McKinley needed a lump sum payment of future benefits she should contact the claims examiner.

The claim before the Workers' Compensation Court was filed on March 27, 1986. Prior to the trial before the Workers' Compensation Court, on August 27, 1986, the attorney for the State Fund wrote a letter to Ms. McKinley's attorney offering settlement in the amount of $40,940.

The lower court found that the first "offer" - the offer that precipitated the dispute - was the January 1986 reduction of Ms. McKinley's benefits from a temporary total rate to a permanent partial rate. However, it found that the duration of benefits in this offer was unclear. It then found that a $36,927.80 offer was extended in the March 21,

5

1986, letter but was withdrawn in the April 28, 1986 letter, bringing the parties back to 70 weeks at $138.50, or $9,695. The court determined that "a reasonable attorney fee in this matter should be based on the difference between the amount awarded and the first firm, specific and determinable offer made by the defendant," that is, $9,695.

Factually we conclude that as of March 21, 1986, the State Fund had made an offer of settlement in the amount of $36,927.80 and there was a specific breakdown on a weekly basis as to the computation of that amount. We disagree with the lower court's conclusion that this offer was withdrawn in the April 28 letter. In Holton v. F.H. Stoltze Land & Lumber Co. (Mont. 1981), 637 P.2d 10, 38 St.Rep. 1835, this Court held that an insurer has a duty to promptly pay any undisputed compensation, refusal of which triggers penalties. In this case, as of January 1986, the State Fund had acknowledged liability for disability benefits under § 39-71-705, MCA, of $138.50 per week for not to exceed 75 weeks. We conclude that the April 28, 1986, letter sets forth Ms. McKinley's Holton benefits. There simply is no factual basis for the conclusion that the March 21 offer was withdrawn. The letter makes no mention of the March 21 offer of $36,927.80, and we conclude that it does not constitute a withdrawal of that offer.

The State Fund argues that the August 27, 1986, offer by its attorney should be compared with the final offer to determine attorney fees. It cites Lasar v. Oftedal & Sons (Mont. 1986), 721 P.2d 352, 43 St.Rep. 1938. In that case, this Court held that there were two conditions to an award of attorney fees under § 39-71-612, MCA (1983): the amount of attorney fees must be in controversy, and the amount awarded must exceed the amount paid or tendered. Lasar, 721 P.2d at 354. This Court refused to award attorney fees in that case

6

because three weeks prior to trial, the insurer had conceded the total amount of compensation due. Thus the first requirement for application of the statute was not met. In contrast, the amount of compensation in the present case remained in controversy through the trial.

Here, following the State Fund's offer of $36,927.80, the petition was filed in the Workers' Compensation Court in March 1986. In June, July, and August the parties engaged in discovery including depositions and written interrogatories, and hearing was set for September 2. The letter in which the offer of $40,940 was made is dated August 27, 1986, one day before the pretrial conference and less than a week before the scheduled hearing date. The statute does not clarify whether the "amount tendered or paid" could refer to this late offer. We conclude, however, that use of the eve-of-trial $40,940 figure would not result in a "reasonable attorney fee" under the facts of this case. In this case, we conclude that the "reasonable attorney fee" under § 39-71-612, MCA (1983), is computed using the difference between the amount awarded and the $36,927.80 offer made preceding the filing of the petition.

Ms. McKinley's counsel has briefed the issues of whether he was erroneously denied a lump sum award of his fees and whether he is entitled to interest on his fees. However, he has not raised these issues properly by filing a cross-appeal. Therefore we will not consider these issues, and the lower court's ruling will stand that attorney fees will be paid on a weekly basis as Ms. McKinley's benefits are paid.

Ms. McKinley's counsel also points out that his fee agreement with Ms. McKinley entitles him to an increase in attorney fees because this case has been appealed. The fee agreement provides that he will receive 40% of compensation

7

payments if the case is appealed to this Court. Because it was, the Workers' Compensation Court may increase his attorney fee to be paid by the State Fund to 40% of the difference between the amount awarded and the $36,927.80 tendered. We remand this action to the Workers' Compensation Court for entry of an order for attorney fees consistant with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

8

Mr. Justice William E. Hunt, Sr., dissenting:

I concur with the majority's opinion that a lump-sum fee should not be awarded in this case for the reason that respondent did not raise this issue properly in a cross-appeal.

I dissent, however, with the majority's disregard of the Workers' Compensation Court's finding that the original offer is $36,000 even though the Workers' Compensation judge found it had been withdrawn and replaced by one for $9,000. It is up to the fact finder to determine what offer or tender is to be used under § 39-71-612, MCA. In this case the Workers' Compensation Court found the "floor" to be the offer contained in the March 28 letter. That offer was $9,000 finding of the "first, firm, specific and determinable offer" seems to me to be a proper criteria of a floor. Where there is a genuine offer, that is later withdrawn and replaced by a lesser offer, attorney fees cannot be defeated when, through the efforts of the attorney, the claimant recovers a greater amount than claimant would have received without the help of the attorney.

By its decision, the majority ignores that the purpose of the Workers' Compensation Act is to provide for the worker injured on the job who cannot provide for himself; it also ignores that § 39-71-104, MCA, which requires liberal construction of these statutes by the courts, was still in effect at the time of McKinley's injury and is still applicable to this case.

William E Hunt Sr
_____
Justice

We join in the dissent of Mr. Justice William E. Hunt, Sr.

_____
Justice

John C. Sheehy
_____
Justice