JUSTICE TRIEWEILER
delivered the Opinion of the Court.
The claimant, Gerald Madill, filed a petition for an order awarding attorney fees and costs pursuant to § 39-71-612, MCA (1979), with the State of Montana Department of Labor and Industry. He contended that various benefits to which he had been entitled were denied by his employer’s workers’ compensation insurer, the State Compensation Insurance Fund; that he incurred attorney fees and costs to recover those benefits; and that he was entitled to reimbursement of those fees and costs. Madill’s claim was denied by the Department of Labor and Industry. Pursuant to § 39-71-204(3), MCA, Madill appealed that denial to the Workers’ Compensation Court for the State of Montana. The Workers’ Compensation Court affirmed the order of the Department of Labor and Industry. Madill appeals from the order of the Workers’ Compensation Court which affirmed the decision of the Department of Labor and Industry. We reverse the order of the Workers’ Compensation Court.
The issue on appeal is whether Madill is entitled to an award of attorney fees and costs pursuant to § 39-71-612, MCA (1979), when disputed benefits are recovered by settlement, rather than by an award from the Workers’ Compensation Court.
FACTUAL BACKGROUND
The facts in this case were based largely on stipulations or stipulated exhibits. In addition, the hearing examiner for the Department of Labor and Industry made findings of fact from which no appeal has been taken. Therefore, for purposes of this appeal, the following facts are undisputed.
The claimant, Gerald Madill, was injured during the course of his employment with Greenfield Irrigation District on September 28, 1979. His injury occurred when he slipped on underground pipe that he was installing, he fell between the pipe and a dirt wall, and twisted his knee.
*453 The claimant’s employer was insured against workers’ compensation claims by the respondent, the State Compensation Insurance Fund. The State Fund accepted liability for Madill’s injury, and commenced payment of temporary total disability benefits at the rate of $154.63 per week in March 1980.
From 1980 to 1984, Madill underwent eleven surgical procedures to treat his knee injury. Included among those procedures were a meniscectomy, arthroscopic surgery, patellar tendon realignment, and a patellectomy. As a complication of the patellectomy, Madill’s left patellar tendon ruptured, and his left knee is severely impaired. As a result of the alteration to his gait, which is caused by his injury, Madill suffers from low back and hip pain.
On August 28, 1986, Michael Sousa, M.D., the orthopedic surgeon who had been primarily responsible for Madill’s care, wrote to the State Fund and advised them of the history of Madill’s surgical treatment and his condition at that time. He stated that, while Madill had “reached maximum healing,” he has lost seventy percent of the strength in his left leg, experiences hyperextension and limited flexion in that leg, and cannot ambulate without use of an orthotic device. In addition to Madill’s difficulty standing or ambulating, he explained that he would be unable to sit for any extended period of time due to the difficulties with his left leg. Dr. Sousa expressed the opinion that the degree of impairment to Madill’s left lower extremity was fifty percent, that he was “quite disabled” as a result of his extremity impairment, and that, in the future, he would be limited to sedentary employment, if it was available.
At the request of Chip McKenna, the claims examiner responsible for handling Madill’s claim at the State Fund, Dr. Sousa submitted an updated report to the State Fund on May 3, 1988. In that report, he noted that radiographic studies indicated early development of osteoarthritis in Madill’s knee joint, that his knee was still unstable, and that he may need a total knee joint replacement at some time in the future. He repeated his advice that Madill was “certainly restricted with regard to his employment capabilities because of a markedly weakened leg.”
In spite of that information, and without establishing that there was employment to which Madill could return, as required by the Workers’ Compensation Court’s decision in Coles v. Seven-Eleven Stores (Mont. W.C.C. Nov. 20,1984), No. 2000, slip op. at 9, McKenna wrote to Madill’s attorney on May 17, 1988, and advised him that, since Madill had completed a two-year training program at Flathead *454 Valley Community College and reached maximum healing, he would be reclassified as partially disabled and his benefits would be reduced to the rate of $99 per week fourteen days from the date of the letter. At that time, McKenna also offered to settle Madill’s claim for 300 weeks of partial disability benefits, or $29,700, minus amounts which had been previously advanced. The total amount previously advanced was approximately $7,600.
On May 25,1988, Madill’s attorney responded to McKenna’s letter and enclosed a report from Ian Steele, a rehabilitation consultant. Steele noted that, although Madill had received training in human services at FVCC, by the time he graduated, the state social services agencies were cutting back on the positions that he had been trained to perform, few if any of those jobs were available, and he had been unsuccessful in his attempts to find other types of work due to his physical limitations. He concluded that:
From a vocational standpoint holding full-time employment would be very difficult due to the pain Mr. Madill experiences. ... The before mentioned would make the placement of Mr. Madill into employment very difficult if not impossible.
Madill’s total disability benefits were terminated, and he was paid at the partial disability rate beginning on May 31, 1988. On June 9, 1988, McKenna acknowledged receipt of Steele’s report, but rejected Madill’s request that he be placed back on total disability status. Further efforts were máde to have total disability benefits reinstated, but were rejected by McKenna. On October 28,1988, the attorney for the State Fund rejected a mediator’s suggestion that a Coles analysis be performed. On March 21, 1989, McKenna wrote to Madill’s attorney and reminded him that the previous offer of a lump sum settlement was being eroded by the payment of bi-weekly benefits, and that, if he did not hear from him by April 30,1989, the offer would be withdrawn.
On January 19, 1989, Madill’s attorney forwarded more information to the State Fund regarding Madill’s physical limitations. On July 28, 1989, the State Fund received an additional report from Dr. Sousa in which he noted that, based on functional capacities assessment, Madill was markedly limited with regard to his activities, and that he felt “it would be unlikely he would be employable in a regular occupation.”
In spite of all the mentioned information, McKenna wrote to Madill’s attorney on August 15, 1989, contended that the vocational *455 information was incomplete, and declined to reinstate total disability-benefits.
On August 16,1989, Madill’s attorney forwarded to the State Fund a report from Grace D. Benesh, a second rehabilitation consultant. She was asked to do a specific analysis of job opportunities for people with a degree in human services, which is what Madill had been trained for at FVCC. She concluded, after a survey of potential employers, that the degree in no way enhanced his employability. She also concluded that, due to his physical restrictions and the fact that he is hard of hearing (he wears two hearing aids), he is not employable in his normal labor market, which she defined as the county of his residence.
Finally, on August 30, 1989, McKenna advised Madill’s attorney that the State Fuad would reinstate temporary total disability benefits retroactive to the date of their termination. A check in the amount of $3,560.32 was enclosed to compensate for the difference between Madill’s partial and total disability rate during the time that his total disability benefits had been terminated.
In that same August 30, 1989, letter, however, McKenna rejected Madill’s claim that he be classified as permanently totally disabled. He stated:
Finally, at this time, the State Fund is not in agreement that your client is permanently totally disabled. We will be referring the file to one of our private rehabilitation vendors to obtain another view on your client’s employability.
The State Fund did refer Madill to Crawford Rehabilitation Services for further evaluation. On March 8, 1990, that firm advised the State Fund that jobs directly related to Madill’s prior work history, or for which he possessed skills as a result of his training, did not appear readily available. Crawford requested authority to research whether other occupations for which Madill was qualified might be available. Apparently authority was given, because on July 20,1990, the claims examiner to whom Madill’s claim had then been assigned at the State Fund, made an entry in the State Fund’s file to the effect that Dr. Sousa had disapproved the job suggested by Crawford’s rehabilitation consultant. In the meantime, it had been necessary for Madill’s attorney to continue employing the services of his own vocational consultant to monitor the investigation and reports being given by Crawford.
Finally, on January 4, 1991, Carol Morris, the next claims examiner who had assumed responsibility for Madill’s claim, orally con *456 ceded to Madill’s attorney that Madill was permanently totally disabled. In a letter dated January 29,1991, Madill’s attorney confirmed that conversation, noted that Madill’s monthly living expenses were greater than his disability benefit, and requested that, for that reason, his future disability benefits be paid to him in a lump stun.
On February 18, 1991, the State Fund responded to Madill’s demand by offering to pay him a total amount of $90,000. It proposed that $30,000 be paid to him in a lump sum, that $34,000 be used to purchase an annuity for his benefit, and that the remainder be retained by the State Fund to repay previous amounts that had been advanced. The State Fund arrived at its proposed settlement amount by calculating the total amount of disability benefits payable to Madill until age 65, and then reducing them to present value. It did so in spite of the fact that he is entitled to disability benefits for the remainder of his lifetime, and that in Willis v. Long Construction Co. (1984), 213 Mont. 203, 690 P.2d 434, we held that there was no authority pursuant to the workers’ compensation laws, as they applied to Madill, for reduction of lump sum awards to present value. The State Fund’s offer, if accepted, would have required that Madill enter into a final settlement of his claim. No further benefits would have been paid.
On March 4,1991, Madill’s attorney responded to the State Fund’s offer by pointing out that he was actually entitled to more than $225,000 of disability benefits over the remainder of his life expectancy, that pursuant to Willis, the State Fund had no authority to reduce a lump sum settlement to present value, and that Madill had now accumulated $30,000 of indebtedness for long-overdue family necessities, including the family’s home and transportation requirements.
Having received no satisfactory response from the State Fund, Madill’s attorney petitioned the Workers’ Compensation Court on July 26,1991, for a partial conversion of Madill’s future total disability benefits to a lump sum without discounting that amount to present value. On the day set for hearing before the Workers’ Compensation Court, within minutes of the time the hearing was to begin, the State Fund agreed to pay Madill a lump sum in the amount of $69,038.39, which it would then recover from the distal end of his periodic permanent total disability benefits. It agreed that the lump sum advance would not be reduced to present value and that receipt of that amount would not affect Madill’s right to recover the remainder of his total disability benefits periodically. The documentation in *457 support of that settlement agreement established that the lump sum advance was necessary for payment of necessities, including medical treatment, clothing, beds, housing repairs, auto repairs, loans from family members, and overdue real estate tax.
The settlement agreement was reached in September 1991. When timely payment was not made pursuant to that agreement, Madill requested that his claim be placed back on the Workers’ Compensation Court’s trial agenda. After that was done, payment of his lump sum advance was finally made by the State Fund.
Following receipt of his lump sum advance, Madill petitioned the Department of Labor and Industry for an award of attorney fees and costs pursuant to § 39-71-612, MCA (1979). He sought fees related to (1) the reinstatement of his total disability benefits in 1989; (2) the concession that he was permanently totally disabled in 1991; and (3) the agreement to convert a portion of his permanent total disability benefits to a lump sum without reducing it to present value, and to pay the remainder of his total disability benefits periodically. Following a hearing and consideration of testimony previously taken, the hearing examiner for the Department of Labor and Industry entered findings of fact which are not challenged by either party on appeal. Many of those facts have been set forth previously. In addition, the hearing examiner found (although identified as conclusions) that a “dispute,” as referred to in § 39-71-612, MCA (1979), existed in two respects: first, whether claimant was entitled to total versus partial disability benefits; and second, whether claimant was temporarily totally disabled or permanently totally disabled. The hearing examiner also found that the benefits which were disputed were recovered due to Madill’s attorney’s efforts. However, the hearing examiner then concluded that, because § -612 provides that attorney fees “may be awarded,” that statute is discretionary, and therefore, no attorney fees were due from the State Fund to Madill.
Madill appealed the denial of his claim by the Department of Labor and Industry to the Workers’ Compensation Court, which, after further written argument, affirmed the order of the hearing examiner, but for different reasons. In reliance on our decisions in Field v. Sears, Roebuck & Co. (1993), 257 Mont. 81, 847 P.2d 306, McKinley v. Am. Dental Mfg. Co. (1988), 232 Mont. 92, 754 P.2d 831, and Lasar v. E.H. Oftedal & Sons (1986), 222 Mont. 251, 721 P.2d 352, the Workers’ Compensation Court concluded that attorney fees are not recoverable pursuant to § 39-71-612, MCA (1979), for benefits voluntarily paid by an insurer prior to trial. The Workers’ Compensation *458 Court also concluded that rejection of a claimant’s demand when an insurer lacks adequate documentation does not give rise to a “controversy” within the meaning of § -612, and that since Madill had demanded conversion of more benefits than he ultimately agreed to accept, there was no evidence that the State Fund had refused the partial lump sum advance that it ultimately agreed to pay.
The issue on appeal is whether, based on the facts presented, and without a court order awarding benefits, the claimant is entitled to an award of attorney fees and costs pursuant to § 39-71-612, MCA (1979).
DISCUSSION
There were no factual issues raised by appeal to the Workers’ Compensation Court. Neither is there a contention by either party on appeal from the Workers’ Compensation Court that the findings of fact made by the hearing examiner for the Department of Labor and Industry were clearly erroneous. The issue raised on appeal relates solely to the application of § 39-71-612, MCA (1979), to the undisputed facts in tbás case. This is a legal issue. We review the Department’s and the Workers’ Compensation Court’s conclusions of law to determine whether they are correct. Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603.
Although the Workers’ Compensation Court’s conclusions represent a fair application of our decisions in Lasar, McKinley, and Field, our role in the application of statutory law is simply to ascertain and declare what is, in substance, contained in that statute, and not to insert what has been omitted or to omit what has been inserted. Section 1-2-101, MCA.
Although the Legislature has amended § 39-71-612, MCA, since 1979, we determine whether a claimant is entitled to attorney fees pursuant to the statute in effect on the date of the claimant’s injury. Hilbig v. Central Glass Co. (1991), 249 Mont. 396, 399, 816 P.2d 1037,1039. Section 39-71-612, MCA(1979), provides, in relevant part:
(1) If an employer or insurer pays or tenders payment of compensation under chapter 71 or 72 of this title, but controversy relates to the amount of compensation due and the settlement or award is greater than the amount paid or tendered by the employer or insurer, a reasonable attorney’s fee, as established by the division or the workers’ compensation judge if the case has gone to hearing, based solely upon the difference between the amount settled for or *459 awarded and the amount tendered or paid, may be awarded in addition to the amount of compensation.
(2)When an attorney’s fee is awarded against an employer or insurer under this section there may be further assessed against the employer or insurer reasonable costs, fees, and mileage for necessary witnesses attending a hearing on the claimant’s behalf. Both the necessity for the witness and the reasonableness of the fees must be approved by the division or the workers’ compensation judge.
(Emphasis added.)
There can be no dispute that when, in 1988, Madill demanded that he be paid at the total disability rate and the State Fund contended that he was entitled to payment at only the partial disability rate, there was a controversy over “the amount of compensation due.” Furthermore, we have held that, for purposes of applying § -612, a dispute over whether benefits should be converted to a lump sum or the amount of that lump sum, and a dispute about whether a claimant is permanently totally disabled, as opposed to temporarily totally disabled, are controversies related to “the amount of compensation due.” See Krause v. Sears, Roebuck & Co. (1982), 197 Mont. 102, 641 P.2d 458; Polich v. Whalen’s OK Tire Warehouse (1981), 194 Mont. 167, 634 P.2d 1162.
Therefore, we conclude that when the State Fund terminated Madill’s temporary total disability benefits over his attorney’s objection in 1988; when the State Fund, instead of asking for further documentation, declined to classify Madill as permanently totally disabled in 1989; and when the State Fund refused to convert a portion of Madill’s future disability benefits to a lump sum without first reducing his benefits to present value and requiring final settlement of all benefits in 1991, controversies existed over “the amount of compensation due.”
Neither is there any question that the amounts for which these three disputes were ultimately settled were greater than the amounts originally paid or tendered by the State Fund. Although the term “settled” is not defined within the Workers’ Compensation Act, and in spite of the State Fund’s contention that we should interpret it to mean a final resolution of all rights as between the parties, the term is commonly understood as it relates to legal affairs, and does not require a resolution of all rights between two parties.
Settlement is defined in Black’s Law Dictionary 1372 (6th ed. 1990) (citations omitted) as:
*460 Act or process of adjusting or determining; an adjusting; an adjustment between persons concerning their dealings or difficulties; an agreement by which parties having disputed matters between them reach or ascertain what is coming from one to the other; arrangement of difficulties; composure of doubts or differences; determination by agreement; and liquidation. In legal parlance, implies meeting of minds of parties to transaction or controversy
In this case, the parties resolved three separate controversies by settlement. They resolved their dispute regarding the amount of benefits to which Madill was entitled in 1988 and 1989; they resolved their dispute about the nature and duration of Madill’s total disability; and they resolved their dispute about whether Madill was entitled to a lump sum advance without final settlement of his claim, and whether the benefits being converted to a lump sum should be reduced to present value. The principle legal question on appeal is whether these three settlements triggered an entitlement to attorney fees pursuant to § 39-71-612, MCA (1979), or whether that statute applies only when the dispute about the amount of compensation due is resolved by the Workers’ Compensation Court. While it would appear, from the language of the statute, that the answer to that question is self-evident, it is appropriate, in light of this Court’s previous decisions, to discuss why we are presented with this issue.
The seminal case on which the Workers’ Compensation Court relied is Lasar v. E.H. Oftedal & Sons (1986), 222 Mont. 251, 721 P.2d 352. In that case, the claimant was being paid temporary total disability benefits when he petitioned the Workers’ Compensation Court to find him permanently totally disabled and to convert his benefits to a lump sum. Approximately two and one-half weeks prior to trial, the defendant conceded permanent total disability, and the Workers’ Compensation Court denied claimant’s request that his benefits be converted to a lump sum. In spite of the fact that the State Fund changed its position regarding the nature of his disability after his petition was filed, the Workers’ Compensation Court denied any award of attorney fees or costs. He appealed the denial of those fees and costs. On appeal, this Court affirmed the Workers’ Compensation Court. Without discussing the reference to “settlement” in § -612, we held that an award of attorney fees required a controversy and that the amount “awarded” exceed the amount paid or tendered. However, as noted, there is no discussion at all in Lasar regarding that language in § -612 which provides for attorney fees and costs where the *461 amount for which a claim is “settled” exceeds the amount paid or tendered. It is impossible to determine whether the issue raised in this case was raised in Lasar.
In McKinley v. American Dental Manufacturing Co. (1988), 232 Mont. 92, 754 P.2d 831, we considered which of several offers by a defendant/insurer should be considered as the basis for calculating the claimant’s attorney fees, where the amount actually awarded by the Workers’ Compensation Court was greater than any of the defendant’s offers. We held that an offer made by the State Fund on the eve of trial would not be considered for purposes of calculating the attorney fee to which the claimant was entitled. However, we affirmed an attorney fee for the claimant based on the difference between an earlier offer and the amount ultimately awarded, even though the amount ultimately awarded by the court was less than the amount demanded by the claimant. In McKinley, we did not address the issue that is raised in this case.
Komeotis v. Williamson Fencing (1988), 232 Mont. 340, 756 P.2d 1153, was not relied on by the Workers’ Compensation Court, but was relied on by this Court in Field v. Sears, Roebuck & Co. (1993), 257 Mont. 81, 847 P.2d 306, and therefore, warrants brief consideration. In Komeotis, we affirmed a denial of attorney fees where the issue of the claimant’s disability had been conceded prior to trial. However, in arriving at our conclusion, we relied on Yearout v. Rainbow Painting (1986), 222 Mont. 65, 719 P.2d 1258, and Lasar. As previously noted, Lasar does not discuss the “settlement” language in § -612. Yearout was not even concerned with § -612. It dealt with the issue of whether a claimant was entitled to attorney fees pursuant to § 39-71-611, MCA (1979), which clearly limits an award of attorney fees to situations where claims are “adjudged compensable.” There is no further discussion of the attorney fee issue in the context of § -612 in our Komeotis decision.
Finally, the Workers’ Compensation Court relied on our decision in Field. In Field, the claimant petitioned the Workers’ Compensation Court to find that he was permanently totally disabled and entitled to a partial lump sum advance of his disability benefits. His employer originally denied his claim of permanent total disability, but conceded that issue approximately three and one-half weeks prior to the date set for hearing. The Workers’ Compensation Court awarded an attorney fee based on the lump sum that it granted, but denied attorney fees and costs in relation to the permanent total disability issue. On appeal, this Court affirmed that denial of attorney fees based on our *462 prior decisions in Lasar and Komeotis. We distinguished our decision in Krause v. Sears, Roebuck & Co. (1982), 197 Mont. 102, 641 P.2d 458, on the basis that, in that case, the hearing had begun when the employer conceded that the claimant was permanently totally disabled. However, as in the Lasar decision, there is no discussion in the Court’s majority opinion in Field regarding that language in § 39-71-612, MCA (1979), which provides for fees and costs when the amount for which a case is “settled” is greater than the amount paid or tendered.
We conclude that, to the extent that our prior decisions in Lasar, Komeotis, and Field have ignored the plain language in § 39-71-612, MCA(1979), which provides for an award of attorney fees and costs where there is a controversy regarding the amount of compensation due, and where the “settlement” is greater than the amount paid or tendered, those decisions are reversed. Likewise, we conclude that the Workers’ Compensation Court’s order, which affirmed the Department’s order denying Madill’s petition for attorney fees and costs on the basis that his benefits were not the result of a court award, was incorrect, and therefore, is reversed.
Furthermore, we conclude that the Workers’ Compensation Court erred when it determined that there was no “controversy” because the State Fund lacked adequate information on which to base payment of the benefits demanded by Madill. In each of the three instances where benefits were demanded, they were ultimately paid based on the same information which had been in the State Fund’s possession when they were denied.
Neither was the Workers’ Compensation Court correct when it concluded that, because the lump sum paid by the State Fund was less than the amount originally demanded by the claimant, he was not entitled to a fee. The fee provided for in § -612 is not conditioned on the amount demanded by the claimant. It is conditioned on the claimant’s recovery of an amount greater than the amount “paid or tendered” by the insurer. See, e.g., McKinley, 232 Mont, at 97, 754 P.2d at 834.
Finally, we conclude that the hearing examiner for the Department of Labor and Industry erred when he held that, even though the conditions for an award of attorney fees pursuant to § 39-71-612, MCA (1979), are otherwise satisfied, the award of fees and costs to the claimant is discretionary. We have held otherwise. See Holton v. F.H. Stoltze Land & Lumber Co. (1981), 195 Mont. 263, 270, 637 P.2d 10, 14.
*463 We, therefore, reverse the order of the Workers’ Compensation Court, and hold that Madill is entitled to an attorney fee based on the difference between 300 weeks of benefits at his partial disability benefit rate, and the total disability benefits to which Madill has been entitled since May 31, 1988, and to which he will be entitled during the remainder of his life expectancy. The presumption is that a reasonable basis for the attorney fee award is Madill’s fee agreement with his attorney. See Wight v. Hughes Livestock Co., Inc. (1983), 204 Mont. 98, 664 P.2d 303. That agreement provides for a fee equal to twenty percent of those amounts recovered due to the attorney’s efforts. That portion of the fee related to those amounts which have already been paid is due in a lump sum. Any fee related to periodic benefits which are owed to Madill in the future should be paid periodically.
This case is remanded to the Workers’ Compensation Court for entry of judgment consistent with this opinion.
JUSTICES HUNT, NELSON and LEAPHART concur.