No. 83-320

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

---

HENRY WILLIS,

  Claimant and Appellant,

 -vs-

LONG CONSTRUCTION COMPANY,

  Employer,

 and

STATE COMPENSATION INSURANCE FUND,

  Defendant and Respondent.

---

APPEAL FROM: Workers' Compensation Court, The Honorable Timothy
      Reardon, Judge presiding.

COUNSEL OF RECORD:

  For Appellant:

    Connell & Beers; Mark S. Connell argued, Missoula,
    Montana

  For Respondent:

    Sarah Power argued, Asst. Attorney General, Helena,
    Montana (State Comp. Ins. Fund)

---

        Submitted: June 1, 1984

         Decided: November 1, 1984

Filed: NOV - 1 1984

_Ethel M. Harrison_

---
          Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

Claimant Henry Willis appeals from an order of the Workers' Compensation Court holding that the State Compensation Insurance Fund could reduce to present value the claimant's lump-sum entitlement to which the court held claimant was entitled. In doing so, the trial court erroneously relied on section 39-71-741, MCA, as constituting the authority for a reduction to present value. The legislative history of the statute clearly reflects an intent to do away with a reduction to present value of any lump-sum award. The trial court further held as an alternative that the State Fund could, at its option, discount the lump sum awarded by application of the 5% discount factor contained in section 39-71-2207, MCA. We further hold that this statute does not apply to the facts of this case.

I.  Facts And Procedural Background

The claimant suffered a disabling industrial injury during the course of his employment with Long Construction Company. This employer is enrolled under Compensation Plan No. 3 of the Workers' Compensation Act and its insurer is the State Compensation Insurance Fund (State Fund). At trial the parties stipulated that the claimant was permanently, totally disabled and the main issues were whether claimant was entitled to a lump-sum payment of his future benefits and if so, whether the future benefits must be discounted to present value.

After the evidentiary hearing the trial court ruled that because of claimant's medical, psychological and financial situations, it was in claimant's best interests to convert

his permanent future total disability benefits into a lump-sum payment. The court considered claimant's desires to pay off existing debts, to purchase fuel efficient transportation, to buy a whirlpool bath for physical therapy, and to buy a home. The court found claimant's total entitlement to future permanent disability benefits, assuming a remaining life expectancy of 37.9 years, to be $331,184.68. This was the undiscounted figure. The court then held, however, that the State Fund could relieve itself of liability under section 39-71-741, by purchasing a commercial annuity at the then existing market rates, or by using the 5% discount factor contained in section 39-71-2207.

Within two weeks of the order the State Fund elected to pay based on the trial court's interpretation of section 39-71-741, rather than to pay by the alternative method of discounting the lump sum to present value by using the 5% factor contained in section 39-71-2207. The State Fund, using the cost of a commercial annuity with a 10½% discount factor, discounted the lump sum to $70,000.00. Claimant refused the tender and elected to appeal the trial court's decision. The State Fund has not appealed from the trial court's underlying decision that claimant is entitled to a lump-sum payment. The issues on appeal simply involve the interpretation and application of sections 39-71-741 and 39-71-2207.

Defendant's postion, simply stated, is that section 39-71-741, governing lump-sum conversions, does not permit a reduction to present value, and further, that section 39-71-2207 has no application to the facts of this case. The State Fund, on the other hand, argues that section 39-71-741, permits a reduction to present value, but implies in its

- 3 -

briefs that defendant is correct in contending that section 39-71-2207, has no application to the facts to this case.

II. Section 39-71-741 Does Not Allow A Reduction To Present Value:

Although 39-71-741, as it presently exists, is silent on whether a lump-sum conversion must be reduced to present value, the latest amendment to this statute clearly reflects the intent that lump-sum payments not be reduced to present value. Section 39-71-741, as it now reads, provides:

> "Compromise settlements and lump-sum payments--division approval required. The biweekly payments provided for in this chapter may be converted, in whole or in part, into a lump-sum payment. Such conversion can only be made upon the written application of the injured worker or the worker's beneficiary, with the concurrence of the insurer, and shall rest in the discretion of the division, both as to the amount of such lump-sum payment and the advisability of such conversion. The division is hereby vested with full power, authority, and jurisdiction to allow and approve compromises of claims under this chapter. All settlements and compromises of compensation provided in this chapter are void without the approval of the division. Approval of the division must be in writing. The division shall directly notify every claimant of any division order approving or denying a claimant's settlement or compromise of a claim. A controversy between a claimant and an insurer regarding the conversion of biweekly payments into a lump sum is considered a dispute for which the workers' compensation judge has jurisdiction to make a determination."

As it now reads this statute simply provides that a lump-sum payment can be made, in whole or in part, and the Workers' Compensation Division has the discretion to approve or reject a compromise settlement or lump-sum payment. However, the statute further provides that the Workers' Compensation Court can determine whether there should be a lump-sum conversion if a dispute exists between the claimant and the insurer. Nowhere does that statute mention discounting a lump sum to present value. Furthermore, the

history of this statute's evolvement to its present form clearly reflects a legislative intent to eliminate the discounting of lump sums to present worth.

Earlier versions of section 39-71-741, had specific provisions for discounting to present worth together with a statutory discount rate to be applied. The first statute dealing with this question, Ch. 96, § 16, Laws of Montana (1915), provided that lump-sum payments be discounted to present value at the rate of 5% per annum. This rate remained until the 1951 amendment of section 92-715, R.C.M. (1947), when the discount rate was reduced to 2% per annum. Finally in 1975 the legislature amended section 92-715, by passage of H.B. No. 39, entitled, "An Act Amending Section 92-715, R.C.M. 1947 to Remove the 2% Discount on Lump Sum Settlements in Workmen's Compensation Cases; and Providing an Effective Date." This amended statute is codified at section 39-71-741, quoted above.

From 1915 to 1975, some 60 years, the predecessors to section 39-71-741, were the only authority to discount lump-sum payments made to claimants under the Workers' Compensation Act. Before the 1975 amendment, the discount factor had been reduced from 5% to 2%, but after the 1975 amendment, the discount factor was eliminated altogether. This 1975 amendment did not simply eliminate the 2% discount factor, it eliminated entirely the requirement that lump-sum payments be discounted to present value. The background of the 1975 amendment clearly reflects this intent.

Passage of the 1975 amendment indicates that two primary factors were behind the amendment. First, insurance carriers under Plans I and II were customarily waiving the statutory 2% discount, which means that claimants receiving benefits

under these plans would receive a lump-sum payment undiscounted to present value. On the other hand, the Plan III carrier, the State Fund, was under strong pressure from the legislative auditor to apply the 2% discount factor to lump-sum payments, and as a result claimants receiving benefits under this plan would receive less than claimants who received benefits under Plans I and II. By passage of the 1975 amendment, the legislature intended to equalize the benefits under all three plans--by totally eliminating the 2% discount factor. This meant that the State Fund would no longer discount lump-sum payments by application of the 2% discount factor, and claimants, like the carriers under Plans I and II, would get their lump-sum payments undiscounted.

Second, there exists in the testimony before the committees who considered this amendment, and in the minutes of these committees, a recurring theme that a worker who received a lump sum could only be made whole by receiving the lump-sum payment undiscounted to present value.

There is no indication of opposition to this amendment, either in the proceedings before the House or the proceedings before the Senate. In considering H.B. No. 39, the minutes of the Senate Labor and Employment Relations Committee, filed February 3, 1975, reflect that those supporting the bill thought it unfair to compel a working person to take a lump-sum payment reduced to present value. The Senate Minutes state:

> "Consideration of House Bill 39: Representative Mular appeared before the committee to introduce this bill. This bill eliminates the present 2% worth adjustment on lump-sum settlements. This is like a sales tax on lump-sum payments. (See attached Memorandum.)

> "Norman Grosfield, of the Division of Workmen's Compensation, appeared in support of this bill. In

- 6 -

the law, if someone applies for a lump-sum settlement, the law requires a 2% discount be taken. _It is significant that an injured man, in this day and age, receive all the money he can._ This 2% adjustment is very insignificant. Private insurers and Plan 1 insurers waive this fee.

"Ernie Post, of the Montana AFL-CIO, appeared in support of HB 39. This 2% is deducted from the claimant's award. _He also stated that in these times it is important to an injured worker to be awarded his total claim._" (Emphasis added.)

The memorandum referred to in Minutes of the Senate Labor Employment Relations Committee (see emphasized portion of the quote from the Senate Minutes), was filed in both the House of Representatives and the Senate in support of H.B.No. 39. The memorandum is directed at eliminating the requirement that lump-sum payments be discounted to present value. It states in relevant part:

"House Bill 39 would amend Section 92-715, R.C.M. 1947, by eliminating a 2% present worth adjustment on lump sum payments. Section 92-715 allows the Division of Workmen's Compensation to grant lump sum payments. Thus, an individual who may have a certain sum of compensation due him can request that that amount of compensation be converted into a lump sum payment. Such a conversion must be approved by the Division. In certain instances, the Division will allow such conversions if the injured worker can illustrate a need for the conversion. If a conversion of future biweekly payments is granted, the law grants to the insurer a present worth adjustment.

"The 2% discount was placed in the law in order to give the insurer a certain benefit in that if the insurer were to pay out the award biweekly instead of in a lump sum, the insurer would have the amount of the award for a period of time for investment purposes, etc.

". . .

"It should be noted that the 2% discount does not apply to lump sum payments that relate to accumulated compensation. It only applies to settlements involving the conversion of future biweekly compensation payments into a lump sum. The Division has found that most self-insurers and private insurance companies waive the 2% discount in the settlement of cases. However, the Division has taken the position that the State Insurance Fund should not waive the 2% discount because of

the recommendations of the Legislative Auditor. The calculation of the discount is somewhat of an administrative burden, and the time spent by Division employees in calculating the discount could be utilized more effectively in other areas.

"The discount has actually very little financial effect on an insurer, but it could have a considerable financial impact on an injured claimant who is in desperate need of financial assistance for his family and himself. The removal of the discount will have very little or no effect on employers premium rates. The present application of the discount does discriminate against employees under Plan 3 in that in most Plan 1 and 2 cases, the self-insurer or the private insurer waives the discount in favor of the employee.

"It is, therefore, recommended that the discount be deleted. It is also recommended that House Bill 39 be given an immediate effective date." (Emphasis added.)

## Trial Court's Analysis

In discussing the legislative background of the 1975 amendment the trial court, although it quoted the Minutes of the House and Senate Committees, and quoted the supporting memorandum submitted to each committee by the head of the Workers' Compensation Division, ignored these documents other than to seize upon one item: the trial court concluded that the sole purpose of the amendment was to eliminate the discrimination against claimants who fortuitously found themselves covered by a Plan III (State Fund) insurer who was compelled to apply the statutory 2% discount when paying in a lump sum. The sole purpose of the amendment, the court reasoned, was to equalize the treatment of claimants under all three plans. With this as its premise, the trial court then effectively ruled that a discount factor must be applied to lump-sum payments under section 39-71-741, but that all three insurance plans must employ the same basis for reaching the proper discount factor.

- 8 -

In reaching its conclusion that section 39-71-741 still requires a discount to present value, the trial court seized on the language of the statute which provides that future benefits payable to a claimant "may be converted . . . into a lump sum." (Emphasis added.) The court seized upon the word "converted" and reasoned that it must mean a discount to present value. The court applied two non-applicable non-Montana cases--Bethlehem Steel Co. v. Jackson (Md. 1952), 87 A.2d 841, and State Insurance Fund v. Renak (Utah 1980), 621 P.2d 714--in holding that the word "convert" meant essentially the same in the context of the issues involved, as the word "commute." We have no need, however, to engage in a battle of semantics because these cases have no application to the issue involved in this case. Neither case involved a situation with a legislative history such as section 39-71-741, and neither case involved a situation where, over the years the discount factor was at first 5%, then 2%, and then eliminated altogether. Based on section 39-71-741, and its history of amendments, we doubt that the Maryland and Utah courts would have reached the same decision as did the trial court here.

The trial court's order reading into section 39-71-741, a requirement that lump-sum payments be discounted to present value, flies in the face of the legislative history of the statute and the proceedings finally removing the discount factor altogether. Clearly, a lump-sum payment, when made under section 39-71-741, cannot be discounted to present value.

III. Section 39-71-2207, MCA, Does Not Apply To This Case

As we have already stated, the trial court ruled alternatively that section 39-71-2207, applied to this

- 9 -

lump-sum payment also, and that the State Fund could relieve itself of liability by paying a lump-sum to claimant discounted at the statutory 5% discount rate. Here, however, the State Fund elected to forego application of section 39-71-2207, and to pay according to the trial court's interpretation of section 39-71-741, discussed above. Perhaps one reason for the State's election was that section 39-71-2207, contains a mandatory 5% discount rate while the trial court's interpretation of section 39-71-741 permitted application of a discount rate based on the interest rates then existing for commercial annuities. Based on this holding, the State Fund discounted the lump sum using a 10½% discount rate. Beyond this, however, it is possible the State Fund believed 39-71-2207 to have no application to this case. Whatever the State Fund's motives, we hold that section 39-71-2207 does not apply to this case.

The focus and intent of section 39-71-2207, is completely different from, and does not conflict with the lump-sum provisions of section 39-71-741. As we have already indicated, section 39-71-741, applied to lump-sum payments either approved by the Workers' Compensation Division or ordered by the Workers' Compensation Court where the parties have disputed either entitlement or the amount. This statute deals with the procedure authorizing the discretionary conversion of a claimant's future disability benefits, in whole or in part, into a lump-sum payment.

On the other hand, section 39-71-2207, applied to situations in which the insurer is liable for future periodic payments but seeks to avoid administration of the fund necessary to assure the future payments. If the Workers' Compensation Division approves the submitted plan, the

insurer is relieved of all future liability by either deposing the sum, discounted to present worth, with the Division, or by purchasing an annuity with an insurance company. The statute applies to all insurers under the Workers' Compensation Act, including the State Fund. (See definition of insurer in section 39-71-116(8), MCA.) Section 39-71-2207, provides:

"How insurer relieved from liability. Any insurer against whom liability may exist for compensation under this chapter may, with the approval of the division, be relieved therefrom by:

"(1) depositing the present value or the estimated present value of the total unpaid compensation for which such liability exists, assuming interest at 5% per annum, with the division; or

"(2) purchasing an annuity within the limitations provided by law in any insurance company granting annuities and authority to transact business in this state, subject to the approval of the division."

Under this statute the result is the same for the claimant, regardless of which option the compensation insurer invokes: the claimant does not get a lump-sum payment. If the insurer invokes section (1) of the statute the Workers' Compensation Division administers the fund and is responsible for future payments. And if the compensation insurer invokes section (2) of the statute an insurance company makes the required periodic payments. In either situation claimants entitlement to a lump-sum payment is not a factor.

IV. Conclusion

In summary, we hold that when a lump-sum payment is ordered under section 39-71-741, MCA, it cannot be discounted to present value. We further hold that section 39-71-2207, MCA is inapplicable to lump-sum payments because it does not deal with discretionary conversion of future benefits to a lump sum to be paid a claimant. We therefore reverse the

order discounting the entire lump sum to present value. However, we do not hold that claimant is entitled, as a matter of right, to the entire undiscounted sum of $331,184.68. Rather, the trial court must determine, under section 39-71-741, whether claimant's best interests would be served by either a full lump-sum payment or by a partial lump-sum payment, with the remainder to be paid out in regular bi-weekly payments.

The issue of whether claimant is entitled to a lump-sum payment has already been decided by the trial court. However, we remand for a determination consistent with this opinion, of whether it should be a full lump-sum payment or a partial lump-sum payment.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

- 12 -

Mr. Justice Fred J. Weber dissents as follows:

I respectfully dissent from the majority opinion in its conclusion that Section 39-71-2207, MCA, does not apply to this case. As pointed out in the majority opinion, an insurer has two alternatives to the continued payment of weekly compensation. First, the insurer can deposit cash with the Division in an amount equal to the estimated present value of the total unpaid compensation, assuming interest at 5 percent. Following such a deposit, payment will be made to the claimant on a weekly basis from that fund. The second alternative is that the insurer may purchase an annuity sufficient to pay out weekly compensation benefits owing to the claimant. In that event, the insurance company shall pay the weekly benefits to the claimant. The majority opinion indicates such an annuity could be purchased for the claimant for approximately $70,000.

The majority opinion results in an award of $331,184.68 to the claimant if the Workers' Compensation Court concludes that a full lump sum settlement should be made. Should that award be made, the claimant could take approximately $70,000 and purchase an annuity which would guarantee him the same weekly benefits he presently is receiving from the insurer for the balance of his life. This would then leave approximately $250,000 to be expended by the claimant. An alternative possibility under the majority opinion is that the claimant could use $140,000 to purchase an annuity giving him lifetime weekly benefits twice those already awarded to him by the Fund, and yet still have approximately $200,000 remaining for expenditure.

In holding that Section 39-71-2207, MCA, does not apply in this case, the majority has failed to address the interplay of that section with Section 39-71-741, MCA. The result

13

of that failure can be illustrated simply by setting forth the following argument, which the claimant now appropriately may make before the Workers' Compensation Court on remand:

(1) Describe in detail the various debts and needs on the part of the claimant which justify a request for a lump sum payment.

(2) Request that the Court award the full lump sum of $331,184.68.

(3) To remove any question present in the Court's mind regarding proper protection for the claimant, offer to apply approximately $70,000 from the lump sum settlement for the purchase of a commercial annuity which will guarantee weekly payments to the claimant equal in amount to those presently being paid to him, thereby protecting claimant against any future waste of funds.

(4) Emphasize to the Court that it would not be to the best interest of the claimant should the Court fail to award the full sum of $331,184.68, as that would benefit only the State Fund. Point out to the Court that under the statutes and opinions of the Montana Supreme Court, the Workers' Compensation Court must interpret the law liberally for the benefit of the claimant. Emphasize that such a liberal interpretation requires the payment of the full sum of $331,184.68 because of the obvious great benefit granted to claimant without any risk of harm.

The foregoing illustrates the dilemma resulting from the majority opinion. In addition, it may cause a race of the diligent as between insurers seeking to purchase an annuity and claimants seeking a lump sum settlement.

I trust that the next session of our legislature will address this dilemma.

14

_____
Justice

 

    Mr. Justice John C. Harrison and Mr. Justice L. C. Gulbrandson join in the foregoing dissent.

_____

_____
Justices