No. 96-117

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996


GERALD MADILL,

Petitioner and Appellant,

v.

STATE COMPENSATION INSURANCE FUND,

Respondent and Respondent.



APPEAL FROM:   Workersþ Compensation Court,
The Honorable Mike McCarter, Judge presiding.



COUNSEL OF RECORD:

For Appellant:

Gregory H. Warner; Attorney at Law;
Great Falls, Montana

For Respondent:

William O. Bronson; Attorney at Law;
Great Falls, Montana



Submitted on Briefs:  December 12, 1996

Decided: January 2, 1997
Filed:

_____
Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

The claimant, Gerald Madill, filed a petition for an order awarding attorney fees and costs pursuant to 39-71-612, MCA (1979), with the State of Montana Department of Labor and Industry. He contended that various benefits to which he had been entitled were denied by his employerþs workersþ compensation insurer, the State Compensation Insurance Fund; that he incurred attorney fees and costs to recover those benefits; and that he was entitled to reimbursement of those fees and costs. Madillþs claim was denied by the Department of Labor and Industry. Pursuant to 39-71-204(3), MCA, Madill appealed that denial to the Workersþ Compensation Court for the State of Montana. The Workersþ Compensation Court affirmed the order of the Department of Labor and Industry. Madill appeals from the order of the Workersþ Compensation Court which affirmed the decision of the Department of Labor and Industry. We reverse the order of the Workersþ Compensation Court.

The issue on appeal is whether Madill is entitled to an award of attorney fees and costs pursuant to 39-71-612, MCA (1979), when disputed benefits are recovered by settlement, rather than by an award from the Workersþ Compensation Court.

                    FACTUAL BACKGROUND

The facts in this case were based largely on stipulations or stipulated exhibits. In addition, the hearing examiner for the Department of Labor and Industry made findings of fact from which no appeal has been taken. Therefore, for purposes of this appeal, the following facts are undisputed.

The claimant, Gerald Madill, was injured during the course of his employment with Greenfield Irrigation District on September 28, 1979. His injury occurred when he slipped on underground pipe that he was installing, he fell between the pipe and a dirt wall, and twisted his knee.

The claimantþs employer was insured against workersþ compensation claims by the respondent, the State Compensation Insurance Fund. The State Fund accepted liability for Madillþs injury, and commenced payment of temporary total disability benefits at the rate of $154.63 per week in March 1980.

From 1980 to 1984, Madill underwent eleven surgical procedures to treat his knee injury. Included among those procedures were a meniscectomy, arthroscopic surgery, patellar tendon realignment, and a patellectomy. As a complication of the patellectomy, Madillþs left patellar tendon ruptured, and his left knee is

severely impaired.  As a result of the alteration to his gait, which is caused by his injury, Madill suffers from low back and hip pain.

On August 28, 1986, Michael Sousa, M.D., the orthopedic surgeon who had been primarily responsible for Madillþs care, wrote to the State Fund and advised them of the history of Madillþs surgical treatment and his condition at that time.  He stated that, while Madill had "reached maximum healing," he has lost seventy percent of the strength in his left leg, experiences hyperextension and limited flexion in that leg, and cannot ambulate without use of an orthotic device.  In addition to Madillþs difficulty standing or ambulating, he explained that he would be unable to sit for any extended period of time due to the difficulties with his left leg.  Dr. Sousa expressed the opinion that the degree of impairment to Madillþs left lower extremity was fifty percent, that he was "quite disabled" as a result of his extremity impairment, and that, in the future, he would be limited to sedentary employment, if it was available.

At the request of Chip McKenna, the claims examiner responsible for handling Madillþs claim at the State Fund, Dr. Sousa submitted an updated report to the State Fund on May 3, 1988.  In that report, he noted that radiographic studies indicated early development of osteoarthritis in Madillþs knee joint, that his knee was still unstable, and that he may need a total knee joint replacement at some time in the future.  He repeated his advice that Madill was "certainly restricted with regard to his employment capabilities because of a markedly weakened leg."

In spite of that information, and without establishing that there was employment to which Madill could return, as required by the Workersþ Compensation Courtþs decision in Coles v. Seven-Eleven Stores (Mont. W.C.C. Nov. 20, 1984), No. 2000, slip op. at 9, McKenna wrote to Madillþs attorney on May 17, 1988, and advised him that, since Madill had completed a two-year training program at Flathead Valley Community College and reached maximum healing, he would be reclassified as partially disabled and his benefits would be reduced to the rate of $99 per week fourteen days from the date of the letter.  At that time, McKenna also offered to settle Madillþs claim for 300 weeks of partial disability benefits, or $29,700, minus amounts which had been previously advanced.  The total amount previously advanced was approximately $7,600.

On May 25, 1988, Madillþs attorney responded to McKennaþs letter and enclosed a report from Ian Steele, a rehabilitation consultant.  Steele noted that, although Madill had received training in human services at FVCC, by the time he graduated, the state social services agencies were cutting back on the positions that he had been trained to perform, few if any of those jobs were available, and he had been unsuccessful in his attempts to find other types of work due to his physical limitations.  He concluded

that:
From a vocational standpoint holding full-time employment
would be very difficult due to the pain Mr. Madill
experiences. . . . The before mentioned would make the
placement of Mr. Madill into employment very difficult if
not impossible.

Madillþs total disability benefits were terminated, and he was
paid at the partial disability rate beginning on May 31, 1988.  On
June 9, 1988, McKenna acknowledged receipt of Steeleþs report, but
rejected Madillþs request that he be placed back on total
disability status.  Further efforts were made to have total
disability benefits reinstated, but were rejected by McKenna.  On
October 28, 1988, the attorney for the State Fund rejected a
mediatorþs suggestion that a Coles analysis be performed.  On
March 21, 1989, McKenna wrote to Madillþs attorney and reminded him
that the previous offer of a lump sum settlement was being eroded
by the payment of bi-weekly benefits, and that, if he did not hear
from him by April 30, 1989, the offer would be withdrawn.
On January 19, 1989, Madillþs attorney forwarded more
information to the State Fund regarding Madillþs physical
limitations.  On July 28, 1989, the State Fund received an
additional report from Dr. Sousa in which he noted that, based on
functional capacities assessment, Madill was markedly limited with
regard to his activities, and that he felt "it would be unlikely he
would be employable in a regular occupation."
In spite of all the mentioned information, McKenna wrote to
Madillþs attorney on August 15, 1989, contended that the vocational
information was incomplete, and declined to reinstate total
disability benefits.
On August 16, 1989, Madillþs attorney forwarded to the State
Fund a report from Grace D. Benesh, a second rehabilitation
consultant.  She was asked to do a specific analysis of job
opportunities for people with a degree in human services, which is
what Madill had been trained for at FVCC.  She concluded, after a
survey of potential employers, that the degree in no way enhanced
his employability.  She also concluded that, due to his physical
restrictions and the fact that he is hard of hearing (he wears two
hearing aids), he is not employable in his normal labor market,
which she defined as the county of his residence.
Finally, on August 30, 1989, McKenna advised Madillþs attorney
that the State Fund would reinstate temporary total disability
benefits retroactive to the date of their termination.  A check in
the amount of $3,560.32 was enclosed to compensate for the
difference between Madillþs partial and total disability rate
during the time that his total disability benefits had been
terminated.
In that same August 30, 1989, letter, however, McKenna

rejected Madill's claim that he be classified as permanently totally disabled. He stated:

Finally, at this time, the State Fund is not in agreement that your client is permanently totally disabled. We will be referring the file to one of our private rehabilitation vendors to obtain another view on your client's employability.

The State Fund did refer Madill to Crawford Rehabilitation Services for further evaluation. On March 8, 1990, that firm advised the State Fund that jobs directly related to Madill's prior work history, or for which he possessed skills as a result of his training, did not appear readily available. Crawford requested authority to research whether other occupations for which Madill was qualified might be available. Apparently authority was given, because on July 20, 1990, the claims examiner to whom Madill's claim had then been assigned at the State Fund, made an entry in the State Fund's file to the effect that Dr. Sousa had disapproved the job suggested by Crawford's rehabilitation consultant. In the meantime, it had been necessary for Madill's attorney to continue employing the services of his own vocational consultant to monitor the investigation and reports being given by Crawford.

Finally, on January 4, 1991, Carol Morris, the next claims examiner who had assumed responsibility for Madill's claim, orally conceded to Madill's attorney that Madill was permanently totally disabled. In a letter dated January 29, 1991, Madill's attorney confirmed that conversation, noted that Madill's monthly living expenses were greater than his disability benefit, and requested that, for that reason, his future disability benefits be paid to him in a lump sum.

On February 18, 1991, the State Fund responded to Madill's demand by offering to pay him a total amount of $90,000. It proposed that $30,000 be paid to him in a lump sum, that $34,000 be used to purchase an annuity for his benefit, and that the remainder be retained by the State Fund to repay previous amounts that had been advanced. The State Fund arrived at its proposed settlement amount by calculating the total amount of disability benefits payable to Madill until age 65, and then reducing them to present value. It did so in spite of the fact that he is entitled to disability benefits for the remainder of his lifetime, and that in Willis v. Long Construction Co. (1984), 213 Mont. 203, 690 P.2d 434, we held that there was no authority pursuant to the workers' compensation laws, as they applied to Madill, for reduction of lump sum awards to present value. The State Fund's offer, if accepted, would have required that Madill enter into a final settlement of his claim. No further benefits would have been paid.

On March 4, 1991, Madill's attorney responded to the State Fund's offer by pointing out that he was actually entitled to more

than $225,000 of disability benefits over the remainder of his life expectancy, that pursuant to Willis, the State Fund had no authority to reduce a lump sum settlement to present value, and that Madill had now accumulated $30,000 of indebtedness for long-overdue family necessities, including the family's home and transportation requirements.

Having received no satisfactory response from the State Fund, Madill's attorney petitioned the Workers' Compensation Court on July 26, 1991, for a partial conversion of Madill's future total disability benefits to a lump sum without discounting that amount to present value. On the day set for hearing before the Workers' Compensation Court, within minutes of the time the hearing was to begin, the State Fund agreed to pay Madill a lump sum in the amount of $69,038.39, which it would then recover from the distal end of his periodic permanent total disability benefits. It agreed that the lump sum advance would not be reduced to present value and that receipt of that amount would not affect Madill's right to recover the remainder of his total disability benefits periodically. The documentation in support of that settlement agreement established that the lump sum advance was necessary for payment of necessities, including medical treatment, clothing, beds, housing repairs, auto repairs, loans from family members, and overdue real estate tax.

The settlement agreement was reached in September 1991. When timely payment was not made pursuant to that agreement, Madill requested that his claim be placed back on the Workers' Compensation Court's trial agenda. After that was done, payment of his lump sum advance was finally made by the State Fund.

Following receipt of his lump sum advance, Madill petitioned the Department of Labor and Industry for an award of attorney fees and costs pursuant to  39-71-612, MCA (1979). He sought fees related to (1) the reinstatement of his total disability benefits in 1989; (2) the concession that he was permanently totally disabled in 1991; and (3) the agreement to convert a portion of his permanent total disability benefits to a lump sum without reducing it to present value, and to pay the remainder of his total disability benefits periodically. Following a hearing and consideration of testimony previously taken, the hearing examiner for the Department of Labor and Industry entered findings of fact which are not challenged by either party on appeal. Many of those facts have been set forth previously. In addition, the hearing examiner found (although identified as conclusions) that a "dispute," as referred to in  39-71-612, MCA (1979), existed in two respects: first, whether claimant was entitled to total versus partial disability benefits; and second, whether claimant was temporarily totally disabled or permanently totally disabled. The hearing examiner also found that the benefits which were disputed were recovered due to Madill's attorney's efforts. However, the hearing examiner then concluded that, because  -612 provides that

attorney fees "may be awarded," that statute is discretionary, and therefore, no attorney fees were due from the State Fund to Madill.

Madill appealed the denial of his claim by the Department of Labor and Industry to the Workersþ Compensation Court, which, after further written argument, affirmed the order of the hearing examiner, but for different reasons.  In reliance on our decisions in Field v. Sears, Roebuck & Co. (1993), 257 Mont. 81, 847 P.2d 306, McKinley v. Am. Dental Mfg. Co. (1988), 232 Mont. 92, 754 P.2d 831, and Lasar v. E.H. Oftedal & Sons (1986), 222 Mont. 251, 721 P.2d 352, the Workersþ Compensation Court concluded that attorney fees are not recoverable pursuant to  39-71-612, MCA (1979), for benefits voluntarily paid by an insurer prior to trial.  The Workersþ Compensation Court also concluded that rejection of a claimantþs demand when an insurer lacks adequate documentation does not give rise to a "controversy" within the meaning of  -612, and that since Madill had demanded conversion of more benefits than he ultimately agreed to accept, there was no evidence that the State Fund had refused the partial lump sum advance that it ultimately agreed to pay.

The issue on appeal is whether, based on the facts presented, and without a court order awarding benefits, the claimant is entitled to an award of attorney fees and costs pursuant to  39-71-612, MCA (1979).

DISCUSSION

There were no factual issues raised by appeal to the Workersþ Compensation Court.  Neither is there a contention by either party on appeal from the Workersþ Compensation Court that the findings of fact made by the hearing examiner for the Department of Labor and Industry were clearly erroneous.  The issue raised on appeal relates solely to the application of  39-71-612, MCA (1979), to the undisputed facts in this case.  This is a legal issue.  We review the Departmentþs and the Workersþ Compensation Courtþs conclusions of law to determine whether they are correct.  Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603.

Although the Workersþ Compensation Courtþs conclusions represent a fair application of our decisions in Lasar, McKinley, and Field, our role in the application of statutory law is simply to ascertain and declare what is, in substance, contained in that statute, and not to insert what has been omitted or to omit what has been inserted.  Section 1-2-101, MCA.

Although the Legislature has amended  39-71-612, MCA, since 1979, we determine whether a claimant is entitled to attorney fees pursuant to the statute in effect on the date of the claimantþs injury.  Hilbig v. Central Glass Co. (1991), 249 Mont. 396, 399, 816 P.2d 1037, 1039.  Section 39-71-612, MCA (1979), provides, in relevant part:

(1)  If an employer or insurer pays or tenders payment of compensation under chapter 71 or 72 of this title, but controversy relates to the amount of compensation due and

the settlement or award is greater than the amount paid or tendered by the employer or insurer, a reasonable attorneyþs fee, as established by the division or the workersþ compensation judge if the case has gone to hearing, based solely upon the difference between the amount settled for or awarded and the amount tendered or paid, may be awarded in addition to the amount of compensation.

(2)  When an attorneyþs fee is awarded against an employer or insurer under this section there may be further assessed against the employer or insurer reasonable costs, fees, and mileage for necessary witnesses attending a hearing on the claimantþs behalf. Both the necessity for the witness and the reasonableness of the fees must be approved by the division or the workersþ compensation judge.

(Emphasis added.)

There can be no dispute that when, in 1988, Madill demanded that he be paid at the total disability rate and the State Fund contended that he was entitled to payment at only the partial disability rate, there was a controversy over "the amount of compensation due."  Furthermore, we have held that, for purposes of applying  -612, a dispute over whether benefits should be converted to a lump sum or the amount of that lump sum, and a dispute about whether a claimant is permanently totally disabled, as opposed to temporarily totally disabled, are controversies related to "the amount of compensation due."  See Krause v. Sears, Roebuck & Co. (1982), 197 Mont. 102, 641 P.2d 458; Polich v. Whalenþs OK Tire Warehouse (1981), 194 Mont. 167, 634 P.2d 1162.

Therefore, we conclude that when the State Fund terminated Madillþs temporary total disability benefits over his attorneyþs objection in 1988; when the State Fund, instead of asking for further documentation, declined to classify Madill as permanently totally disabled in 1989; and when the State Fund refused to convert a portion of Madillþs future disability benefits to a lump sum without first reducing his benefits to present value and requiring final settlement of all benefits in 1991, controversies existed over "the amount of compensation due."

Neither is there any question that the amounts for which these three disputes were ultimately settled were greater than the amounts originally paid or tendered by the State Fund.  Although the term "settled" is not defined within the Workersþ Compensation Act, and in spite of the State Fundþs contention that we should interpret it to mean a final resolution of all rights as between the parties, the term is commonly understood as it relates to legal affairs, and does not require a resolution of all rights between two parties.

Settlement is defined in Black's Law Dictionary 1372 (6th ed. 1990) (citations omitted) as:

Act or process of adjusting or determining; an adjusting; an adjustment between persons concerning their dealings or difficulties; an agreement by which parties having disputed matters between them reach or ascertain what is coming from one to the other; arrangement of difficulties; composure of doubts or differences; determination by agreement; and liquidation. In legal parlance, implies meeting of minds of parties to transaction or controversy . . . .

In this case, the parties resolved three separate controversies by settlement. They resolved their dispute regarding the amount of benefits to which Madill was entitled in 1988 and 1989; they resolved their dispute about the nature and duration of Madill's total disability; and they resolved their dispute about whether Madill was entitled to a lump sum advance without final settlement of his claim, and whether the benefits being converted to a lump sum should be reduced to present value. The principle legal question on appeal is whether these three settlements triggered an entitlement to attorney fees pursuant to  39-71-612, MCA (1979), or whether that statute applies only when the dispute about the amount of compensation due is resolved by the Workers' Compensation Court. While it would appear, from the language of the statute, that the answer to that question is self-evident, it is appropriate, in light of this Court's previous decisions, to discuss why we are presented with this issue.

The seminal case on which the Workers' Compensation Court relied is Lasar v. E.H. Oftedal & Sons (1986), 222 Mont. 251, 721 P.2d 352. In that case, the claimant was being paid temporary total disability benefits when he petitioned the Workers' Compensation Court to find him permanently totally disabled and to convert his benefits to a lump sum. Approximately two and one-half weeks prior to trial, the defendant conceded permanent total disability, and the Workers' Compensation Court denied claimant's request that his benefits be converted to a lump sum. In spite of the fact that the State Fund changed its position regarding the nature of his disability after his petition was filed, the Workers' Compensation Court denied any award of attorney fees or costs. He appealed the denial of those fees and costs. On appeal, this Court affirmed the Workers' Compensation Court. Without discussing the reference to "settlement" in  -612, we held that an award of attorney fees required a controversy and that the amount "awarded" exceed the amount paid or tendered. However, as noted, there is no discussion at all in Lasar regarding that language in  -612 which provides for attorney fees and costs where the amount for which a claim is "settled" exceeds the amount paid or tendered. It is impossible to

determine whether the issue raised in this case was raised in Lasar.

In McKinley v. American Dental Manufacturing Co. (1988), 232 Mont. 92, 754 P.2d 831, we considered which of several offers by a defendant/insurer should be considered as the basis for calculating the claimantþs attorney fees, where the amount actually awarded by the Workersþ Compensation Court was greater than any of the defendantþs offers.  We held that an offer made by the State Fund on the eve of trial would not be considered for purposes of calculating the attorney fee to which the claimant was entitled.  However, we affirmed an attorney fee for the claimant based on the difference between an earlier offer and the amount ultimately awarded, even though the amount ultimately awarded by the court was less than the amount demanded by the claimant.  In McKinley, we did not address the issue that is raised in this case.

Komeotis v. Williamson Fencing (1988), 232 Mont. 340, 756 P.2d 1153, was not relied on by the Workersþ Compensation Court, but was relied on by this Court in Field v. Sears, Roebuck & Co. (1993), 257 Mont. 81, 847 P.2d 306, and therefore, warrants brief consideration.  In Komeotis, we affirmed a denial of attorney fees where the issue of the claimantþs disability had been conceded prior to trial.  However, in arriving at our conclusion, we relied on Yearout v. Rainbow Painting (1986), 222 Mont. 65, 719 P.2d 1258, and Lasar.  As previously noted, Lasar does not discuss the "settlement" language in  -612.  Yearout was not even concerned with  -612.  It dealt with the issue of whether a claimant was entitled to attorney fees pursuant to  39-71-611, MCA (1979), which clearly limits an award of attorney fees to situations where claims are "adjudged compensable."  There is no further discussion of the attorney fee issue in the context of  -612 in our Komeotis decision.

Finally, the Workersþ Compensation Court relied on our decision in Field.  In Field, the claimant petitioned the Workersþ Compensation Court to find that he was permanently totally disabled and entitled to a partial lump sum advance of his disability benefits.  His employer originally denied his claim of permanent total disability, but conceded that issue approximately three and one-half weeks prior to the date set for hearing.  The Workersþ Compensation Court awarded an attorney fee based on the lump sum that it granted, but denied attorney fees and costs in relation to the permanent total disability issue.  On appeal, this Court affirmed that denial of attorney fees based on our prior decisions in Lasar and Komeotis.  We distinguished our decision in Krause v. Sears, Roebuck & Co. (1982), 197 Mont. 102, 641 P.2d 458, on the basis that, in that case, the hearing had begun when the employer conceded that the claimant was permanently totally disabled.  However, as in the Lasar decision, there is no discussion in the Courtþs majority opinion in Field regarding that language in  39-71-612, MCA (1979), which provides for fees and costs when the amount for which a case is "settled" is greater than the amount paid or tendered.

We conclude that, to the extent that our prior decisions in Lasar, Komeotis, and Field have ignored the plain language in 39-71-612, MCA (1979), which provides for an award of attorney fees and costs where there is a controversy regarding the amount of compensation due, and where the "settlement" is greater than the amount paid or tendered, those decisions are reversed. Likewise, we conclude that the Workers' Compensation Court's order, which affirmed the Department's order denying Madill's petition for attorney fees and costs on the basis that his benefits were not the result of a court award, was incorrect, and therefore, is reversed.

Furthermore, we conclude that the Workers' Compensation Court erred when it determined that there was no "controversy" because the State Fund lacked adequate information on which to base payment of the benefits demanded by Madill. In each of the three instances where benefits were demanded, they were ultimately paid based on the same information which had been in the State Fund's possession when they were denied.

Neither was the Workers' Compensation Court correct when it concluded that, because the lump sum paid by the State Fund was less than the amount originally demanded by the claimant, he was not entitled to a fee. The fee provided for in -612 is not conditioned on the amount demanded by the claimant. It is conditioned on the claimant's recovery of an amount greater than the amount "paid or tendered" by the insurer. See, e.g., McKinley, 232 Mont. at 97, 754 P.2d at 834.

Finally, we conclude that the hearing examiner for the Department of Labor and Industry erred when he held that, even though the conditions for an award of attorney fees pursuant to 39-71-612, MCA (1979), are otherwise satisfied, the award of fees and costs to the claimant is discretionary. We have held otherwise. See Holton v. F.H. Stoltze Land & Lumber Co. (1981), 195 Mont. 263, 270, 637 P.2d 10, 14.

We, therefore, reverse the order of the Workers' Compensation Court, and hold that Madill is entitled to an attorney fee based on the difference between 300 weeks of benefits at his partial disability benefit rate, and the total disability benefits to which Madill has been entitled since May 31, 1988, and to which he will be entitled during the remainder of his life expectancy. The presumption is that a reasonable basis for the attorney fee award is Madill's fee agreement with his attorney. See Wight v. Hughes Livestock Co., Inc. (1983), 204 Mont. 98, 664 P.2d 303. That agreement provides for a fee equal to twenty percent of those amounts recovered due to the attorney's efforts. That portion of the fee related to those amounts which have already been paid is due in a lump sum. Any fee related to periodic benefits which are owed to Madill in the future should be paid periodically.

This case is remanded to the Workers' Compensation Court for entry of judgment consistent with this opinion.

/S/  TERRY N. TRIEWEILER


We concur:

/S/  WILLIAM E. HUNT, SR.
/S/  JAMES C. NELSON
/S/  W. WILLIAM LEAPHART


Justice Karla M. Gray, dissenting.


I respectfully dissent from the Court's opinion.  Stripped to its essentials, the Workers' Compensation Court's order concluded that no controversy existed under  39-71-612, MCA, regarding Madill's early demands for permanent total disability status because the State Fund indicated its willingness to reconsider that status on receipt of additional information and, on receipt of that information, permanent total disability status was conceded.  The court also concluded that Madill was not entitled to fees under  39-71-612, MCA, relating to the 1991 partial lump sum advance because he had petitioned for lump sum conversion of all future benefits and dropped that demand at the time of trial, instead negotiating a partial lump sum advance which included attorney fees.  I would affirm these conclusions.  While time does not permit a full and complete recitation of my concerns with the Court's opinion and the bases therefor, I set those concerns out briefly below.

My primary area of concern with the Court's opinion relates to its presentation of the so-called undisputed facts.  I agree with the Court that the hearing examiner's findings of fact were not appealed and, as a result, that they constitute facts for purposes of this case.  I also agree that the parties stipulated to certain factual and exhibit matters.

Unfortunately, the Court's statement of the so-called undisputed facts is not confined to either the hearing examiner's unchallenged findings or the matters stipulated by the parties. Overall, it is my view that the Court selectively presents certain facts and omits other pertinent facts; moreover, even as to those "facts" it chooses to present, some are erroneous, while others are incomplete.  Many are liberally interspersed with implicit or explicit editorial comment, not to mention legal commentary, which is far afield from the hearing examiner's findings and from any

actual undisputed fact. The effect of the Court playing fast and loose with the facts is exactly as intended: to place a decidedly negative and inappropriate cast on the State Fund's actions in order to "set up" the reader for the conclusions the Court later reaches. Because it apparently would be both fruitless and futile to set out each instance of the Court's actions in this regard, I mention only a few, confident that these examples will make clear both the error contained in the Court's presentation of the facts and the ultimate error in the Court's conclusions reached by applying the law to the so-called undisputed facts.

An early example of the Court's inclusion of its own editorial commentary into the presentation of the so-called undisputed facts is found in the Court's discussion of the State Fund's actions following Dr. Sousa's updated report in May of 1988. The Court correctly states that the updated report was requested by the State Fund as a follow-up to an earlier report limiting Madill to sedentary employment. In the updated report, as the Court observes, Dr. Sousa repeated his view that Madill was "restricted with regard to his employment capabilities." The Court then begins its next paragraph, purportedly still discussing facts, as follows:

    In spite of that information, and without
establishing that there was employment to which Madill
could return, as required by . . . Coles, . . . .
There is nothing of a factual nature in those opening clauses, and certainly nothing taken from the hearing examiner's findings. The "in spite of" phrase is a negative connotation added by the Court in the midst of supposedly undisputed factual material. In addition, it goes without saying that the "without establishing the Coles requirements" comment is legal commentary by the Court interspersed into purported undisputed facts.

These objectionable commentaries merely obfuscate the actual-- and, in and of itself, neutral--factual situation being presented in this portion of the Court's opinion; namely, that within two weeks of receiving the updated report from Dr. Sousa, the State Fund advised Madill's counsel that because Madill had reached maximum healing and been retrained, his benefit rate was being reduced. Moreover, I note, as the hearing examiner found, that the settlement offer contained in the State Fund's letter to Madill's counsel--and referred to by the Court--was a continuation of a settlement offer already "on the table." The Court neglects to include this information.

An example of the Court's use of selective and incomplete facts in order to "build its case" against the State Fund from the outset follows soon after. The Court states that "[o]n October 28, 1988, the attorney for the State Fund rejected a mediator's suggestion that a Coles analysis be performed." I agree that this is a fact which is explicitly contained in an exhibit in the fairly voluminous record in this case. It is clearly a "selective" fact,

however, intentionally chosen for the negative impact it produces in the reader. It also is the Court's only reference to the mediation component of this case which was addressed by the hearing examiner and whose findings in this regard are totally ignored by the Court.

The actual facts regarding the mediation are that Madill petitioned for the mediation following the State Fund's June 9, 1988, rejection of his request to be returned to total disability status. As the hearing examiner found:

Mediator William Connor issued his recommendation on October 17, 1988. Mr. Connor did not recommend reinstatement of TTD or payment of PTD. Despite disagreements with various aspects of the recommendations on the part of both parties, the matter was not appealed to the Workers' Compensation Court.

(Emphasis added.) The Court conveniently omits these facts because to include them would so clearly undercut its negative depiction of the State Fund's actions.

Further examples of the Court's faulty presentation of the so-called undisputed facts in this case abound. In discussing the parties' ongoing efforts at seeking and providing additional information, the Court editorializes--in its factual discussion of the State Fund's referral of Madill to Crawford Rehabilitation Services for further evaluation--that the State Fund wrote to Madill's counsel in August of 1989 requesting additional information "[i]n spite of all the mentioned information." There is nothing factual about the use of "in spite of."

Shortly thereafter, the Court sets out the State Fund's August 30, 1989, letter stating that it did not agree "at this time" that Madill was permanently totally disabled and its referral of Madill to Crawford. The Court then adds, "[i]n the meantime, it had been necessary for Madill's attorney to continue employing the services of his own vocational consultant to monitor the investigation and reports being given by Crawford." The hearing examiner made no finding that such employment "had been necessary;" he found only that Madill's counsel had employed a vocational consultant to maintain contact with Crawford and update him on developments regarding Madill's employability status.

And so it continues. The Court states that the State Fund's offer of February 18, 1991, was based on benefits payable to Madill until age 65; it then adds its combined editorial and legal commentary in the midst of the so-called undisputed facts by stating "[i]t did so in spite of the fact that he was entitled to disability benefits for the remainder of his lifetime." Here, even more important than the improperly included editorial and legal commentary, is the Court's plain error in reporting the "until age 65" basis on which the State Fund purportedly calculated its offer. Contrary to the Court's version of the fact, the letter

communicating the offer clearly states that the figures were calculated "for both the time between now and age 65 and the balance of projected lifetime benefits;" the hearing examiner's corresponding finding is that the settlement offer was "net of projected lifetime benefits."  To its clear misrepresentation of both the State Fund's actions and the actual undisputed facts of record, the Court then adds its editorial and legal commentary.  Still purporting to be presenting undisputed facts, the Court then inserts its own characterization of the legal effect of a nonexercised acceptance of the State Fund's offer, matters upon which the hearing examiner neither found nor concluded.

The Court then "neglects" to include the fact--found by the examiner--that, after Madill rejected the $90,000 offer and in the course of subsequent negotiations, "a verbal offer was made to increase the $90,000 offer by 20% to account for attorney fees, for a total offer of $108,940.80."  The record reflects that this offer was extended in May of 1991.  Neither the record nor the examiner's findings reflect any response by Madill to this offer prior to filing his petition in the Workers' Compensation Court, in July of 1991, for partial conversion of future benefits to a lump sum.  Thus, at the time of that petition, the State Fund's offer was in excess of $108,000 and it had been "on the table" for approximately two months.

A final example of the Court's mistreatment of the facts in this case is its paragraph about Madill's petition for partial conversion and the settlement reached in that regard.  Having failed to set forth important facts regarding the State Fund's latest offer and the short period of time between that offer and the petition, the Court then "neglects" to include the fact--as found by the hearing examiner--that $21,903.60 of the partial lump sum conversion to which Madill and the State Fund agreed was "for payment of attorney fees and costs incurred over the period of the attorney/client relationship."  The Court also fails to include the facts that the agreement was not approved by the Employment Relations Division until January 3, 1992, and that--three months thereafter--Madill's counsel requested that the State Fund pay attorney fees and costs totaling just over the $21,903.60 amount contained in the lump sum conversion for that express purpose.

Perhaps the Court somehow fails to see any relevance in the actual undisputed facts of this case vis-a-vis the attorney fee issue before us.  Perhaps the actual facts are simply too "inconvenient" to be noticed by the Court.  In any event, as I indicate briefly below after a short digression relating to legal principles, the actual undisputed facts do not comport with the results the Court produces on each of the three attorney fee subissues.

I begin this portion of my discussion by stating without equivocation that I agree with the "plain language" principles set

forth by the Court and with the dictionary definition of "settled" which it advances. As a result, I also agree with the Court that, had the Workers' Compensation Court denied claimant's petition for attorney fees solely on the basis that his benefits were not the result of a court award, such a denial would have constituted reversible error. As set forth at the outset of this opinion, however, the court concluded that Madill was not entitled to fees for additional reasons which are further addressed below. Moreover, while I agree with the Court that, pursuant to our case law, the award of attorney fees under 39-71-612, MCA, is not discretionary and that the Department erred in concluding otherwise, the Workers' Compensation Court did not affirm that portion of the Department's order denying fees; thus, that issue is not before us in this case.

I also agree with the Court that, at certain points in time, "controversies" existed between Madill and the State Fund with regard to: 1) reinstating him to temporary total disability; 2) whether he was permanently totally disabled; and 3) the lump sum conversion. I disagree with the Court's attempt to interpret the statutory word "settled" in a vacuum in these regards by refusing to recognize any element relating to when and how the parties reached resolution of the issues, and I address the Court's application (or lack thereof) of the law to the actual facts of this case further below.

Before doing so, however, it is important that I state my disagreement with the Court's overruling of three decisions "to the extent [they] have ignored the plain language in 39-71-612, MCA," regarding settlement. All else aside, "to the extent" overrulings generally give little guidance to practitioners or trial courts as to precisely what is being overruled. That is particularly true here, where a fair reading of at least Lasar and Komeotis makes it clear that no issue regarding "settlement" was raised and, as a result, no such issue was addressed by this Court in those cases. Under such a circumstance, criticizing those decisions for "ignoring" the statutory language seems absurd. Nor is there any apparent reason for overruling decisions which did not raise or address an issue merely because this case does address that issue. Unfortunately, time does not permit a more thorough statement of why I believe that the Court is in error in overruling these cases, as it is more important to return to how the Court disposes of the three attorney fee subissues before us.

The Court does not apply the principles it sets forth to the actual undisputed facts in this case. Indeed, it only minimally bothers with facts at all in its resolution of the subissues after stating that "the parties resolved three separate controversies by settlement." The only "factual" statement about this case which appears thereafter is that "[i]n each of the three instances where benefits were demanded, they were ultimately paid based on the same

information which had been in the State Fund's possession while they were denied." This single "factual" statement is simply not true.

With regard to Madill's status during the 1988-89 period, the facts and record are clear that the parties were in close contact throughout the period, with the State Fund making--and remaking-- its determinations based on frequently updated information from Madill. After the State Fund's reclassification of Madill in May of 1988, based on his maximum healing and retraining, Madill sought mediation of the issue and the mediator "did not recommend reinstatement of TTD or payment of PTD." Thereafter, Madill supplied yet another updated report from Dr. Sousa. Because that report did not take into account Madill's retraining in human services at Flathead Valley Community College, the State Fund advised that Madill's vocational information was incomplete. In response, Madill forwarded a rehab consultant's report in August of 1989 which concluded that Madill's retraining had not enhanced his employability and that he was "not employable in his normal labor market." On August 30, 1989, within two weeks of receipt of this report, the State Fund determined to reinstate Madill's temporary total disability benefits retroactive to the date of their termination. Given this record, it is beyond my imagining how the Court can state that the State Fund reinstated Madill to temporary total disability in August of 1989 based on the same information in its possession when it terminated those benefits and reclassified him in May of 1988.

The same is true of the Court's statement that the State Fund conceded in 1991 that Madill was permanently totally disabled based on the information in its possession in August of 1989. In this regard, the record is clear that when it reinstated Madill to TTD, the State Fund disagreed "at this time" that Madill was entitled to permanent total disability benefits. The State Fund then referred Madill to Crawford for further rehab evaluation. Following Dr. Sousa's disapproval of the job suggested by the Crawford rehab consultant, the State Fund conceded that Madill was permanently totally disabled. Again, the ultimate decision clearly was not based on the information in the State Fund's possession in August of 1989.

Finally, with regard to the lump sum issue, the Court suggests--without ever referring to facts--that the partial lump sum conversion to which Madill and the State Fund agreed in 1991 was greater than the amount paid or tendered by the insurer. The genesis of this notion cannot be ascertained from the Court's opinion and I will not attempt to posit the path by which the Court arrived at it. The facts relating to this subissue, however, are as follows.

Immediately following the State Fund's determination in January of 1991 that Madill was permanently totally disabled,

Madill requested the lump sum conversion of all of his future benefits.  The State Fund was not interested in a total conversion without a full settlement of Madill's case (and the law does not require otherwise).  By early March of 1991, the State Fund had made a settlement offer and Madill had rejected it.  The State Fund increased the settlement offer to approximately $108,000--including attorney fees--in May of 1991 and Madill did not respond or present a different proposal for consideration.  Instead, in July of 1991, Madill petitioned the Workers' Compensation Court for a lump sum conversion of all of his future benefits.  At the time of trial several months later, Madill dropped that request and the parties negotiated and agreed on a partial lump sum conversion in the amount of approximately $68,000, including attorney fees.

In short, the parties were attempting to accomplish different things from the outset.  Madill started with a request and petition for a total lump sum conversion and ended up agreeing with the State Fund on a partial lump sum conversion.  The State Fund began by desiring a total settlement, offered in the amount of $108,000, and settled with Madill on a partial lump sum conversion in the amount of $68,000.  How this meets the requirements of  39-71-612, MCA, of a settlement in excess of any amount tendered by the State Fund is not explained by the Court.  It is my view that the Court is simply in error, and unwilling to apply its legal principles to the facts of this case.  In addition, of course, the anomaly--to state it gently--of now awarding attorney fees which were agreed upon and paid as part of the partial lump sum conversion, is never explained--or even referred to--by the Court.

I dissent.

/S/  KARLA M. GRAY

Justice Charles E. Erdmann joins in the foregoing dissenting opinion.

/S/  CHARLES E. ERDMANN

Chief Justice J. A. Turnage joins in the foregoing dissenting opinion.

/S/   J. A.   TURNAGE


Justice Terry N. Trieweiler specially concurring.

I concur with the majority opinion in order to respond to the dissenting opinion without unnecessarily cluttering this Courtþs decision.

It is difficult for me to understand the reason for the dissent or the point that it makes.

The author agrees that the Departmentþs hearing examiner erred when he concluded that, even if the other elements of  39-71-612, MCA (1979), are satisfied, an award of attorney fees is discretionary.

The author agrees that the Workersþ Compensation Court erred when it concluded that  -612 did not apply to settlements.

Certainly the dissent does not disagree that there was a controversy over the amount of benefits due the claimant.  The State Fund terminated Madillþs temporary total disability benefits; decided he was only entitled to partial disability benefits; offered him 300 weeks of partial disability benefits at the rate of $99 a week; and refused, in spite of repeated demands, to restore him to a total disability status.  During all of that time, the claimant, through his attorney, contended that he was permanently totally disabled and entitled to lifetime benefits at the rate of $154.63 per week.  How could that disagreement not give rise to a controversy?

Certainly the dissent does not disagree that this case was settled.  Both parties signed a petition for approval of their settlement agreement.

Finally, the dissent cannot disagree that the amount for which the claim was settled was greater than the amount paid or tendered by the State Fund.  The State Fund offered to settle claimantþs case for benefits equal to $29,700.  After protracted delay, substantial expense, and time-consuming effort on the part of claimantþs attorney, he ultimately settled his claim for $225,000. Whether there were intervening offers, and how many intervening offers were made, is irrelevant.  The fact that there was a controversy, the controversy was settled, and the amount received in settlement was greater than the amount paid or tendered, is all that was necessary pursuant to the plain language of  39-71-612, MCA (1979), to warrant reimbursement to the claimant for the attorney fees and costs that he incurred to compel the State Fund to pay him the benefits to which he was entitled in the first place.

On a strictly legal basis, aside from what has been discussed so far in this concurring opinion, nothing further is necessary. However, because of the nature of the rhetoric in the dissenting

opinion, the following response is made to the dissent's factual allegations.  I will try to confine the response to specific accusations by the dissent that facts were reported erroneously in the majority opinion.  It is impossible to respond to general statements to the effect that certain facts have been omitted, some facts are erroneous, and others are incomplete.

Neither will I try to respond to complaints by the dissent that the majority opinion includes editorial comments.  Matters of style are not normally the focus of debate between the majority and minority on this Court, and I would prefer to keep it that way.

First, reference to the Coles decision is not extraneous to the issues raised by the parties on appeal.  The State Fund terminated Madill's temporary total disability benefits.  He demanded that they be reinstated.  The State Fund argued on appeal that that termination did not give rise to a controversy within the meaning of  -612 because Dr. Sousa's report established that he had reached maximum healing and could perform some kind of sedentary labor.  Therefore, the State Fund's position was that it had a right to reduce his benefits until he proved that there was no occupation to which he could return.  In Coles, which had been decided by the Workers' Compensation Court prior to the date of the State Fund's action, the Workers' Compensation Court held, and we later affirmed, that once an injured employee reaches maximum healing and cannot return to his normal labor market, he has established the probability of "no reasonable prospect of employment" within the meaning of the total disability statute, and therefore, the burden shifts to the insurer to demonstrate that other suitable work is available.  In order to so do, the insurer must establish the following facts:

1.    A physician's determination that claimant is as far restored as the permanent character of his injuries will permit;

2.    A physician's determination of the claimant's physical restrictions;

3.    A physician's determination that claimant can return to some form of employment based on evidence that the physician is familiar with the duties of that employment; and

4.    Notice to the claimant that the physician's report has been received, with a copy of the report attached to the notice. Wood v. Consolidated Freightways (1991), 248 Mont. 26, 30, 808 P.2d 502, 505; Coles v. Seven-Eleven Stores (1985), 217 Mont. 343, 347-48, 704 P.2d 1048, 1051.

The point of the Coles reference was to illustrate that this was not simply a situation where the claimant had not documented his temporary total disability.  That situation had been documented to the extent that claimant could at that point.  Further documentation, which was prerequisite to termination of total disability benefits, was the burden of the State Fund.  Likewise, the only purpose for referring to the mediator's recommendation was

to illustrate that the State Fund was aware of its responsibilities pursuant to the Coles decision, and chose not to comply with them. Therefore, this was not a simple situation where the State Fund was simply awaiting further documentation by the claimant. It was a controversy created by the State Fundþs failure to perform its own obligations. Nothing else about the mediatorþs recommendation was relevant to the issues raised in this case. It was not necessary that Madill prove the State Fund acted unreasonably in order to recover attorney fees and costs pursuant to -612, as it existed in 1979.

Next, the dissent asserts that the majority opinion mischaracterizes the State Fundþs February 18, 1991, letter to Madillþs attorney. The majority opinion states that the State Fundþs offer was based on benefits to which Madill was entitled until age sixty-five. The dissent contends that the offer was based on benefits to which Madill was entitled over the remainder of his lifetime. Which contention is correct is a matter of interpretation. One conclusion is supported by the actual dollar amounts involved, another conclusion could arguably be arrived at based on the language in the letter. However, neither conclusion is particularly relevant. Under either scenario, Madill was offered less than he was entitled to and less than he ultimately received in settlement. The total of benefits to which he was entitled until age sixty-five was $120,728.40. The total amount over his lifetime was $225,359.68. The State Fundþs offer was $90,000, and therefore, did not equal either amount. If the State Fundþs offer was based on lifetime benefits, then why was it necessary to calculate what he was entitled to until age sixty-five? The point, however, is that this interpretive disagreement is totally irrelevant to the majorityþs ultimate conclusion.

Neither is it relevant that, at some point later in the negotiations, the State Fundþs settlement offer was increased by twenty percent. Any increase followed the original controversy, was another offer of final settlement, and only resulted from the efforts of Madillþs attorney.

Next, the dissent finds some significance to the fact that a portion of the lump sum advance which was made by the State Fund was for the purpose of paying attorney fees. The suggestion is that an award of attorney fees, pursuant to -612, would duplicate what has already been paid. That suggestion shows a complete misunderstanding of the purpose for Madillþs petition and the existence of -612.

The attorney fees which have been paid in this case were paid from a conversion of Madillþs future disability benefits which are necessary for his and his familyþs support. They were not paid by the State Fund, as required by -612. They were paid by Madill. The purpose of this petition is to reimburse him for attorney fees

that he had to pay out of money that is necessary to pay for his groceries, his transportation, and his home because the expense was only necessary due to the State Fundþs denial of the benefits to which he was entitled.  The dissent is absolutely correct, however, when it observes that the majority fails to see any relevance in the fact that Madill has previously received a lump sum advance of future disability benefits in order to pay his attorney.  It is not that those facts are "inconvenient"; it is simply that they have nothing to do with the issues in this case.

Next, the dissent suggests that the August 1989 report from National Rehabilitation Consultants was the first vocational report sent to the State Fund which documented that Madill was not employable in his normal labor market.  The suggestion that it was Madillþs burden to provide any vocational report ignores the Coles requirements previously set forth in this opinion.  However, it also ignores the fact that on May 25, 1988, approximately one week after receiving notice that his total disability benefits would be terminated, Madillþs attorney forwarded a report from National Rehabilitation Consultants which concluded that placement of Madill in employment would be "very difficult, if not impossible."  It also ignores the fact that by July 6, 1989, Dr. Sousa had notified the State Fund that he doubted Madill was employable in a regular occupation.  It is for these reasons that any additional vocational rehabilitation reports were cumulative and did not provide information in addition to what the State Fund already knew very early in the course of its controversy over the amount of benefits owed to Madill.  It is because of these facts that the majority opinion is absolutely correct when it states that benefits were ultimately paid based on the same information which had been in the State Fundþs possession while they were denied.

Finally, the dissent disagrees with the Courtþs conclusion that the lump sum conversion, which was ultimately paid to Madill, was greater than any amount paid or tendered by the insurer.  The dissent suggests that further facts are necessary.  Well, here they are.

First of all, no lump sum was ever paid or tendered to Madill before the settlement that was finally agreed upon.  As we noted in Hilbig v. Central Glass Co. (1991), 249 Mont. 396, 406-08, 816 P.2d 1037, 1043-45, there is a big difference between an offer conditioned on the waiver of some right which does not have to be waived, and a simple payment or tender of benefits.  However, even if we assume, for purposes of argument, that an offer was sufficient, $29,700 is less than an advance of $69,000 with an agreement that the remainder of Madillþs lifetime total disability benefits would be paid periodically.  In other words, $225,000 is worth more than $30,000.  It is also more than $90,000, and finally, if the last offer is relevant, it is worth more than $108,000.

The dissent suggests that because Madill agreed to something

less than he had originally demanded,   -612 is, for some reason, not applicable.  However, as pointed out in the majority opinion, there is no condition in   -612 which requires that before a claimant is entitled to attorney fees, he must recover by either settlement or award the amount of his original demand.  The condition to attorney fees is simply that he recover more than was paid or tendered by the insurer.

The dissent concludes that it is not necessary to overrule Lasar or Komeotis because they did not deal with the issue with which this case is concerned.  Presumably, the Workersþ Compensation Court would disagree.  Lasar is one of the opinions relied on by the Workersþ Compensation Court for its conclusion that   39-71-612, MCA (1979), did not apply to cases which were settled.  Komeotis is one of the opinions relied on by the author of the dissent when she authored the Field case.  If it is so clear that Komeotis is not applicable to the facts in this case, then it is curious why it was relied on in Field to support the exact opposite conclusion arrived at in this case.

In summary, while the dissent nitpicks the majorityþs interpretation of records which were admitted without objection, and facts which were agreed upon or found by the hearing examiner, there is no suggestion in the dissent how any of these disagreements are relevant to the ultimate outcome of this case. The statute we have been asked to construe is very clear and straightforward.  It has been applied in the manner that it was written, and creative arguments to the contrary notwithstanding, that is what this Court is obliged to do.

/S/  TERRY N. TRIEWEILER